**Anthony J. ANASTASIO,**
**Appellant in 87–5225,**

v.

**SCHERING CORPORATION,**
**Appellant in 87–5188.**

**Nos. 87–5188, 87–5225.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 17, 1987.

Decided Feb. 5, 1988.

---

Bruce P. McMoran (argued), Patrick T. Collins, Norris, McLaughlin & Marcus, Somerville, N.J., for Anthony J. Anastasio.

Richard C. Mariani (argued), Jerrold J. Wohlgemuth, Apruzzese, McDermott, Mastro & Murphy, Springfield, N.J., for Schering Corp.

Before SEITZ, HUTCHINSON and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

The appeal and cross-appeal before us arise out of an age discrimination suit brought by plaintiff Anthony J. Anastasio against his former employer, Schering Corporation (Schering).[1] Anastasio claimed that Schering eliminated his job and fired him because of his age. The case was bifurcated and tried before two juries. The first jury found in Anastasio's favor on the issues of liability and willfulness. The second awarded him $184,853.70 in damages. The district court granted Schering's motion for judgment notwithstanding the verdict on the issue of willfulness but denied the remainder of the parties' post-trial motions.

Schering challenges the district court's rulings on the following bases: (1) there was insufficient evidence to place the question of liability before the jury or, in the alternative, to support the jury's finding; (2) plaintiff's counsel made improper remarks during his summation in the liability phase of the trial that were prejudicial and thus warrant a new trial; and (3) as a matter of law, Anastasio failed to mitigate his damages because he refused the job

Schering offered him.[2] In his cross-appeal, Anastasio contends the district court erred in granting Schering's motion for judgment notwithstanding the verdict on the issue of willfulness and in denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on the damage issues of front pay and mitigation.

For the reasons that follow, we will affirm the order of the district court.

I

The following facts are stipulated. Defendant, Schering Corporation, engages in the research, development, manufacture and marketing of ethical and proprietary pharmaceuticals. The International Pharmaceutical Products Division (IPPD) is the division of Schering that is responsible for its international operations.

Plaintiff, Anthony J. Anastasio, was employed by Schering in the technical services department of IPPD from December 3, 1962, until December 31, 1982. He was hired in 1962 as Assistant to the Technical Liaison Manager. Between 1968 and 1970 he became the department's Engineering Liaison Manager. By 1974, he was responsible for chemical and industrial engineering services and supervised three industrial engineers and one chemical engineer. In the early 1970's Anastasio's title was changed to Manager-Engineering.

The following facts were established at trial. On October 12, 1982, Anastasio met with his supervisor, Anthony Wolfe, IPPD's Director-Technical Services, and Matthew Marcus, IPPD's Personnel Man-

---

1. The District Court had jurisdiction under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621–634 (West 1985), and exercised pendent jurisdiction over the claim brought under New Jersey's Law Against Discrimination, N.J.Stat.Ann. § 10:5–12 (West Supp.1987). We have jurisdiction under 28 U.S. C.A. § 1291 (West Supp.1987).

2. Schering claims it moved for a directed verdict on the issue of mitigation. Our review of the record reveals no such motion. Schering did address the consequences of Anastasio's refusal to accept its job offers in its opposition to Anastasio's motion for directed verdict and

again in its argument on the equitable question of reinstatement. At that time, it apparently accepted Anastasio's position that under *Ford Motor Co. v. EEOC*, 458 U.S. 219, 239–40, 102 S.Ct. 3057, 3069–70, 73 L.Ed.2d 721 (1982), an employee has not failed to mitigate damages by refusing a job found not substantially equivalent to his job. *See* App. at 1404–07, 1412. Were we inclined to conform Schering's argument before us to that which it made at trial, we would agree with the district court's decisions not to bar equitable relief and to submit the issue of front pay to the jury. *See* App. at 1441–44.

ager. Marcus told Anastasio that his position was being eliminated effective December 31, 1982.[3]

Anastasio and Marcus met again on October 19, November 12 and December 8, 1982. At the November 12 meeting Marcus offered Anastasio the position of Technical Procedures Control Supervisor. The salary grade level of that position was 85 and the salary range was $22,800 to $36,-200. The position was considered professional rather than managerial; it entailed supervising four clerical employees. The salary grade level of Anastasio's position, Manager-Engineering, was 90 and its range was $36,000 to $57,800. Anastasio's salary, as of November 12, 1982, was $50,650; he supervised five employees, three of whom were professionals. At the December 8 meeting, Marcus offered Anastasio the position of Technical Procedures Control Manager, at a salary grade level of 59.[4] The job responsibilities for this position were those of the Technical Procedures Control Supervisor, making it the same job with a different title and salary grade.

Anastasio declined the job offers made at the November 12 and December 8 meetings. His employment with Schering was terminated on December 31, 1982. On that date Anastasio was 62 years old.

On November 22, 1982 (prior to his termination), Anastasio filed a verified complaint with the New Jersey Division on Civil Rights and a charge of discrimination with the Equal Employment Opportunity Commission, claiming he was terminated wrongfully from his job because of his age. One year later, he filed a complaint in the District Court of New Jersey, charging age discrimination under both the Age Discrim-

ination in Employment Act (ADEA), 29 U.S.C.A. §§ 621–634 (West 1985) and the New Jersey Law Against Discrimination, N.J.Stat.Ann. § 10:5–12 (West Supp.1987).[5] Prior to trial, both parties filed motions for summary judgment, which were denied. The trial was bifurcated as to liability and damages, and the liability and damages phases were tried before separate juries.

In the liability phase, the jury returned a verdict for plaintiff, finding that Anastasio's age was a determinative factor in Schering's decision to terminate his position and his employment, that Schering's stated reasons for Anastasio's termination were pretextual, and that Schering's actions in this matter were willful. After the jury returned this verdict, Schering renewed its motion for a directed verdict[6] and also moved for judgment notwithstanding the verdict. The district court denied Schering's motions as to the jury's finding that age was a determinative factor in the termination and that Schering's stated reasons for it were pretextual. It granted Schering's motion for judgment notwithstanding the verdict as to the willfullness of the ADEA violation.

In the damages phase of the trial, the jury first found that Schering did not offer Anastasio a job that was substantially equivalent to his position as Manager-Engineering. Proceeding to the issue of general mitigation, it found Anastasio had failed to mitigate his damages by failing to be reasonably diligent in trying to secure other employment, but declined to reduce his damages due to this failure to mitigate. It then awarded Anastasio $174,853.70 in damages under the ADEA, comprised of

---

3. Two persons in the technical services department of IPPD, including Anastasio's secretary, were also terminated.

4. Grade 59 is a holding grade or, as described by personnel manager Marcus, "an atypical grade that's developed for unusual kinds of situations." App. at 702. Although this holding grade was a mechanism whereby Anastasio's salary ($50,650 on November 12, 1982) could have been maintained indefinitely, testimony as to whether it would be continued at that level was conflicting. See App. at 622, 1308. Schering initially told Anastasio his salary would be

reduced to the grade 85 level after one year. It next said his salary might be reduced. It finally changed the grade level of the position to 59.

5. Anastasio also sought damages under the New Jersey Law Against Discrimination for emotional distress and humiliation resulting from the discharge.

6. The district judge reserved his decision on Schering's motion until the jury reached its verdict.

$127,571.70 in back pay and $47,282.00 in front pay.[7]

Anastasio moved for judgment notwithstanding the verdict or, in the alternative, a new trial as to the findings on mitigation and front pay. Schering moved for a new trial on liability. The district court denied these motions. Both parties filed timely appeals.[8]

## II

■ Schering's first argument upon appeal is that Anastasio failed to prove that age was a determinative factor in its decision to eliminate his position and terminate his employment.[9] In order to meet this ultimate burden, Anastasio could have persuaded the jury of age discrimination either directly, by showing that his age motivated Schering, or indirectly, by demonstrating that Schering's stated reason for his termination was pretextual. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 898 (3d Cir.) (in banc), *cert. denied,* — U.S. —, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

■ In reviewing the district court's denial of Schering's motion for judgment n.o.v., we must determine whether the evidence and justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict. *Bhaya v. Westinghouse Electric Corp.,* 832 F.2d 258, 259 (3d Cir.1987) (citing *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 789 F.2d 253 (3d Cir.1986)). We review the denial of Schering's motion for a new trial for abuse of discretion. *Berndt,*

789 F.2d at 258. After a careful review of the record, we conclude that there was sufficient evidence from which the jury could have found that age was a determinative factor in Schering's decisions. We also determine that the district court did not abuse its discretion in denying the motion for a new trial based on the weight of the evidence.

The evidence at trial showed that from 1979 until the time of Anastasio's termination, Schering maintained Management Inventory Summaries on which its managers were listed in descending order by age. These summaries also contained backstops (backup managers) for each of its managers, again referenced by age. On one of the summaries, Anthony Wolfe (Anastasio's supervisor, who made the decision to eliminate his position) had written the birth month and year for each manager who reported to him.

Wolfe testified that his calculations showed that, in order to meet budgetary guidelines, he had to reduce headcount in the technical services department by three. Although three persons (not counting Anastasio) had been reassigned to other areas or had resigned by December 31, 1982, Anastasio's position was, nevertheless, eliminated and he was fired on that date. Prior to his termination, Schering had added the name of another manager to its Management Inventory Summary; this manager was 38 years old. By January 5, 1983, three working days after Anastasio's termination, Schering had created three ad-

---

7. Having found Anastasio was entitled to compensation for embarrassment, humiliation and emotional upset under New Jersey's Law Against Discrimination, the jury awarded him $10,000 in addition to his damages under the ADEA. App. at 246–47.

8. Anastasio filed a notice of appeal in June, 1986, prior to entry of final judgment by the district court. The parties agreed to dismissal of this appeal without prejudice, pursuant to Federal Rule of Appellate Procedure .42(b).

9. Although it phrases this argument in terms of the ultimate issue, in accordance with our decisions in *Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 789 F.2d 253 (3d Cir.1986) and *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393 (3d Cir.), *cert. denied,* 469 U.S. 1087, 105 S.Ct.

592, 83 L.Ed.2d 702 (1984), Schering also contends that Anastasio failed to make out a *prima facie* case of age discrimination. This position is not consistent with our decision in *Berndt* and Schering's statement at trial that plaintiff had established a *prima facie* case. *See* App. at 1000. We reiterate that it is unnecessary for an appellate court to decide whether a *prima facie* case has been established once the matter has been fully litigated. *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 372 n. 2 (3d Cir.1987); *Berndt,* 789 F.2d at 257. At that point the evidence produced by plaintiff to show a *prima facie* case is considered together with all the other evidence in the case in determining sufficiency.

ditional managerial positions in its technical services department, and had named persons to fill these positions. By April, 1983, these three positions had been filled by persons in their thirties. By July, 1983, a fourth position was filled, again by a person substantially younger than Anastasio. None of these new positions were noted in the 1983 budget; there was testimony that such positions normally were included.

In addition, one year prior to Anastasio's termination for these alleged budgetary problems, the IPPD personnel manager had worked up an early retirement package for Anastasio. The IPPD Placement Planning Committee minutes at that time note that Anastasio was nearing retirement. Schering did not offer the early retirement package to Anastasio in 1981 because it believed he would find the benefits figures too low to be acceptable.

As Schering points out, none of these facts, alone, supports a finding that age was a determinative factor in Anastasio's termination. Taken as a whole, however, they provide a rational basis for the jury's finding of liability.

■ In addition to its motion for a new trial based on the weight of the evidence, Schering filed a motion for a new trial on liability on the ground that Anastasio's counsel made improper statements during his closing argument. We determine that the district court did not err in denying this motion.

Our review of the record reveals two statements in which counsel questioned the credibility of a witness.[10] Schering correctly states that such an expression of personal opinion is not proper. See Model Code of Professional Responsibility DR 7–106(C)(4). The question before us, then, is whether it is reasonably probable that this impropriety influenced the jury and made its verdict a product of prejudice. Draper v. Airco, Inc., 580 F.2d 91, 96–97 (3d Cir.1978).

We note first that trial counsel did not object to these statements before the jury retired.[11] The district court instructed the jury throughout the trial that statements of counsel do not constitute evidence. See App. at 449, 1022–23, 1063–64, 1066–67. The jury heard these isolated comments in the context of an otherwise proper summation and with the benefit of the court's instructions. A new trial is not warranted on this basis. See, e.g., Emery-Waterhouse Co. v. R.I. Hospital Trust Nat'l Bank, 757 F.2d 399, 410 (1st Cir.1985); Kehr v. Smith Barney, Harris Upham & Co., 736 F.2d 1283, 1286 (9th Cir.1984).

■ The final issue before us on the liability phase of the trial is presented by Anastasio, who claims the district court

10. In his summation, counsel for Anastasio commented on the creation of three new managerial positions in early January, 1983, as follows:

How does one create [new jobs] on January 5 of 1983, three working days into the new year, complete with job descriptions, organizational charts, the names of the people who were going in the jobs, three of whom, of course, were in their 30s, how do you do that? I submit you can't.

Mr. Meister testified, "I never knew anything about it." I don't believe him, ladies and gentlemen....

There is no way I can believe, ladies and gentlemen, that those jobs, three of which were filled by men in their 30s, weren't known about in the autumn of 1982 when supposedly Mr. Anastasio's job was being eliminated because of cost cutting.

App. at 1047.

11. Anastasio argues that Schering is precluded from raising this issue upon appeal because it failed to object to these statements at trial.

While "[n]o party may assign as error ... the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict," Fed.R.Civ.P. 51, the issue of prejudice raised by allegations of improper commentary subsumes more than the failure to request an instruction. A "curative" instruction may not mitigate the prejudicial effect of counsel's improper statements. Cf. Ayoub v. Spencer, 550 F.2d 164, 170 (3d Cir.) (district judge's comments were not sufficient to mitigate prejudice), cert. denied, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977). We will, therefore, consider counsel's failure to object at trial to what appellate counsel later contended was improper commentary as one of the factors bearing on our determination of whether the district judge abused his discretion by concluding that the statements were not so prejudicial as to warrant a new trial. See, e.g., Kehr v. Smith Barney, Harris Upham & Co., 736 F.2d 1283, 1286 (9th Cir.1984).

erred in overturning the jury's verdict that Schering's violation of the ADEA was willful. Our analysis of this issue is controlled by our decision in *Dreyer v. Arco Chemical Co.*, 801 F.2d 651 (3d Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987), in which we set forth a standard for willfulness that we believe comports with the Supreme Court's mandate in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

Distinguishing cases in which the employer adopts a policy that is claimed to violate the ADEA, as in *Thurston*, from those in which the employer takes an action against an individual, as in *Dreyer* and the case now before us, we concluded that, in the latter, the use of a "knew or showed reckless disregard" standard would allow recovery of liquidated damages whenever there was a violation of the ADEA. *Dreyer*, 801 F.2d at 657. We therefore held that, in cases involving termination or other action directed at an employee, a finding of willfulness and imposition of liquidated damages requires evidence of conduct that is outrageous rather than merely duplica-

tive of that needed for a finding that the employer has violated the ADEA. *Id.* at 658.

In accordance with these guidelines, we have reviewed the record before us. Anastasio admittedly relies on the same evidence to support Schering's violation of the ADEA and the willfulness of that violation. In Anastasio's showing, however, we see no evidence of the type of outrageous conduct that is a prerequisite to a finding of willfulness. We will, accordingly, affirm the district court's order granting judgment n.o.v. on this issue.

### III

Anastasio's final argument on cross-appeal is that the district court erred in its trial and post-trial rulings on the issues of front pay and general mitigation.[12] He contends that the court should not have submitted the general question on mitigation to the jury because Schering failed to present any evidence at trial on this aspect of its affirmative defense.[13]

■ Schering had the burden of proving that Anastasio failed to mitigate damages.

---

**12.** Because Schering did not move for a directed verdict on the issue of mitigation, as set forth in *Ford Motor Co., see supra* note 2, and challenges the damages verdict on no other basis, we confine our review to those questions raised by Anastasio.

**13.** The jury's answers to interrogatories on the issues of general mitigation, back pay and front pay were as follows:

2. Did Mr. Anastasio fail to mitigate his damages; that is, did he fail to exercise reasonable diligence in attempting to find other employment after the termination of his employment at Schering?

 X Yes
 — No

3. If your answer to question number 2 is "Yes," by what sum of money should Mr. Anastasio's damages be reduced to reflect such a failure to mitigate them?

 $ .00

4. Please calculate the amount of back pay, if any, to which you find Mr. Anastasio is entitled, using Joint Exhibit No. 1 and without regard, at this point, to any deduction of any amount: (1) which you may have set forth in answer to question number 3, or (2) which Mr. Anastasio received upon his termination from Schering.

 $186,014.00

5. Please subtract from the amount set forth in your answer to question number 4 the sum of $58,442.30 which Mr. Anastasio received as severance pay from Schering, and set forth the net amount resulting from that subtraction. (If this results in a negative number, report the figure "0".)

 $127,571.70

6. Please calculate the amount of front pay, if any, to which you find Mr. Anastasio is entitled, using Joint Exhibit No. 2 and without regard, at this point, to any deduction of any amount which you may have set forth in answer to question number 3.

 $ 47,282.00

7. Please add the figures reported in your answers to questions 5 and 6 and set forth that total.

 $174,853.70

8. Please subtract from the figure reported in your answer to question number 7 any figure which you set forth in answer to question number 3 and set forth the net amount resulting from that subtraction. This figure will represent the net amount of back and/or front pay which Mr. Anastasio will be awarded by your verdict.

 $174,853.70

App. at 245–46.

*See Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 889 (3d Cir.1984). It could have satisfied this burden in either of two ways. It could have proved that it offered Anastasio a job that was substantially equivalent to his position as Manager-Engineering. *Ford Motor Co.*, 458 U.S. at 239–40, 102 S.Ct. at 3069–70. It also could have established that other substantially equivalent positions were available to Anastasio and he failed to use reasonable diligence in attempting to secure such a position. *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1234 (7th Cir.1986); *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624–25 (6th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984); *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir.1978); *see also Wehr v. Burroughs Corp.*, 619 F.2d 276, 278 n. 3 (3d Cir.1980) (court's interrogatories to jury properly placed on defendant the burden of showing "both that plaintiff failed to exercise reasonable diligence to mitigate his damages, and that there was a reasonable likelihood that plaintiff might have found comparable work if he had exercised reasonable diligence").

The jury answered the question of job equivalency under *Ford Motor Co.* in Anastasio's favor. That finding is not before us. *See supra* notes 2 and 12.

■ Anastasio contends Schering did not establish that he failed to otherwise mitigate his damages. Upon review of the record before us, we find that while Schering did place in question the diligence of Anastasio's job search, it produced no evidence to show that comparable work was available. Because Anastasio's testimony that he applied for sixty jobs but received no job offers stands unrebutted in that respect, we conclude that the issue of general mitigation, set forth in interrogatories 2 and 3, should not have been submitted to the jury.

Anastasio argues that submission of this question to the jury requires us to grant judgment n.o.v. or a new trial on damages. Although Anastasio correctly perceives error, we believe neither judgment n.o.v. nor a new trial is warranted on this record, for the following reasons.

■ As an initial matter, Anastasio misperceives the nature of the remedies of back pay and front pay under the ADEA. Under this act, back pay is a mandatory element of damages, while front pay is discretionary. *See Maxfield v. Sinclair Int'l*, 766 F.2d 788, 794, 796 (distinguishing mandatory back pay remedy under the ADEA, which incorporates 29 U.S.C. § 216(b) (1982) (Fair Labor Standards Act provision that makes back pay a mandatory element of damages) from discretionary back pay remedy of Title VII; also suggesting that front pay is discretionary relief under the ADEA), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *cf. Blum v. Witco Chemical Corp.*, 829 F.2d 367, 375 (3d Cir.1987) (under the ADEA, pension benefits received from former employer after an illegal discharge are collateral benefits and may not be set off against a back pay award, whereas pension benefits received from a subsequent employer are another form of earned income and may be set off against a front pay award). Thus, while the district judge should have directed the jury to find that Schering did not prove that Anastasio failed, in general, to mitigate his damages and that, as a result, Anastasio was entitled to the entire amount of back pay to which the parties had stipulated, he did not necessarily have to direct a similar finding with respect to front pay based solely on Schering's failure to meet its burden of proof on this issue.

We next consider Anastasio's argument that the jury's answers to the interrogatories on general mitigation and front pay are inconsistent. He contends that this "inconsistency" (1) of itself invalidates the jury's verdict and (2) illustrates the jury's confusion on the subject of damages, which resulted in an improper reduction in front pay. We will address these contentions in reverse order.

To conclude that the jury's award of front pay was improper, we would have to find that it reduced that award, either directly or indirectly, based on its finding

that Anastasio failed to mitigate. The record does not support a finding of direct reduction. The jury answered interrogatory no. 3 by stating that Anastasio's damages should be reduced by ".00" based on failure to mitigate and, when directed to subtract its answer in interrogatory no. 3 from the gross award of front plus back pay to arrive at a net award, it clearly subtracted ".00", because its net figure is the same as its gross. *See supra* note 13. In addition, the interrogatories on back and front pay, nos. 4 and 6 respectively, explicitly instruct the jury to report those figures without regard to the amount it chose in interrogatory no. 3 to reflect any failure to mitigate.

■ This leaves us with Anastasio's argument that mitigation and front pay are, conceptually, so entwined that the jury's award of front pay had to include a reduction based on its finding on mitigation. This argument assumes that the only justification for a reduction in front pay is a finding of a failure to mitigate. This is incorrect. While, as we have noted, a plaintiff's duty to mitigate does "serve as an effective control on unjustified damage awards," *see Maxfield,* 766 F.2d at 796 (citing *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984)), it is not the only reason for which a front pay award may be reduced to an amount less than a claimant's total projected earnings to age 70. A claimant's work and life expectancy are pertinent factors in calculating front pay, just as they are in assessing damages for future loss of earnings in breach of employment contract and personal injury cases. *See EEOC v. Prudential Fed. Savings & Loan Ass'n.,* 763 F.2d 1166, 1173 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985) (citing

*Koyen v. Consolidated Edison Co.,* 560 F.Supp. 1161, 1168–69 (S.D.N.Y.1983)). The purpose of front pay under the ADEA is to ensure that a person who has been discriminated against on the basis of age is made whole,[14] not to guarantee every claimant who cannot mitigate damages by finding comparable work an annuity to age 70.

■ The question of when Anastasio would have retired was properly left for the jury to answer. This record contains evidence from which the jury could have found that Anastasio planned to retire before age 70.[15] Since there was a rational basis for the jury's verdict, judgement n.o. v. granting Anastasio front pay to age 70 would not have been proper.

We turn now to Anastasio's argument that the jury's responses to the interrogatories on mitigation and front pay are inconsistent and thus warrant our granting a new trial. The court's instructions to the jury on mitigation were properly framed:

In a case such as the present, it was Mr. Anastasio's duty to use reasonable diligence in attempting to find other suitable employment which, had it been secured, would thus have reduced or minimized his monetary loss or damage. In the present case the defendant Schering has alleged that Mr. Anastasio failed to conform to that standard of reasonable diligence, and it is up to you to determine whether Schering has established this claim by a preponderance of the believable evidence.

In order to meets its burden of proof defendant Schering must show that opportunities for suitable employment were available for plaintiff, that plaintiff knew or could have discovered these employ-

14. Here, we agree with the district court that the position to which Mr. Anastasio should have been restored by the "intervention of the equitable powers of the Court, is that of one who possessed the right to elect whether or not to retire at age 65 or at any time thereafter and up to age 70." App. at 1434.

15. *This includes evidence that Anastasio did not pursue his job search diligently (a fact the jury apparently found against him in its answer to interrogatory no. 2), that his wife was ill (App.*

at 1231), and that he had received pre-retirement educational assistance from Schering in 1981 and 1982 in a program through which funding was available during employment and for up to two years after retirement, with a maximum reimbursement period of five years (App. at 1988–94). The jury awarded Anastasio front pay through December 31, 1986. *See* App. at 1970. Anastasio turned 66 on October 9, 1986. *See* App. at 474.

ment opportunities and that he failed to use reasonable diligence in seeking such employment.

App. at 1509. The jury declined to reduce Anastasio's damages by any amount, despite its finding that he failed to mitigate. *See* interrogatory no. 3, *supra* note 13.

On the issue of damages due to any failure to mitigate, the jury was instructed "that with regard to any failure of Mr. Anastasio to mitigate his damages by the exercise of reasonable diligence to find new employment, that failure need not preclude him from recovering any back pay or front pay whatsoever, unless you determine that should be the case." App. at 1511. The jury's decision not to reduce its awards of front pay and back pay by any amount, notwithstanding its finding that Anastasio failed to mitigate his damages, is consistent with this instruction.

As noted by the district court in its attempt to determine whether these answers were inconsistent, the jury could have concluded that, while Anastasio was not sufficiently diligent in his job search, his damages should not be reduced because there were no jobs available. App. at 1529. The jury wholly excused Anastasio from the effects of its finding that he had failed to mitigate. This result is in accord with the law as applied to this record. Any errors in the instructions or rulings on the issue of mitigation were, therefore, harmless under Federal Rule of Civil Procedure 61. *See United States v. Hasting,* 461 U.S. 499, 509, 103 S.Ct. 1974, 1980–81, 76 L.Ed.2d 96 (1983).

On the question of front pay, the court instructed the jury:

As with the potential amounts of the elements of back pay, the parties have assisted you by stipulating to amounts for each element of front pay for each year in the front pay period. Thus, in calculating any front pay award to the plaintiff, whether for the entire period from April 1986 through October 1990 [the month in which Anastasio reached the age of 70] or for any shorter period of time which you determine is appropriate, you should refer to Joint Exhibit 2

for the amount which the parties agree is attributable to that period of time.

Again, as with back pay, you may cut off the front pay or you may decline to award any front pay at any point at which you find plaintiff would have no longer been employed by defendant for reasons unrelated to defendant's termination of plaintiff's position, such as by reason of plaintiff's retirement. In addition, in arriving at a front pay award you must take into consideration the question of mitigation which again I will describe further in a moment.

App. at 1506. The jury's decision to award less than the amount stipulated as earnings through age 70 is consistent with a decision that Anastasio would have retired prior to age 70. As shown, such a decision is not inconsistent with the jury's findings on mitigation.

Because there is a view of this case under which the jury's answers to the interrogatories are consistent, the district court was correct in adopting that view and entering judgment accordingly. *Burger King Corp. v. Mason,* 710 F.2d 1480, 1489 (11th Cir.1983) (quoting *Griffin v. Matherne,* 471 F.2d 911, 915 (5th Cir.1973)), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *see also Gallick v. Baltimore and Ohio R.R.,* 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963) (it is the duty of a court to attempt to harmonize the jury's answers, if that is possible, giving them a fair reading).

Having found no reversible error in the district court's trial and post-trial rulings, and agreeing that a new trial is not warranted in the interest of justice, we will affirm.