

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2006

# Vandenbraak v. Alfieri

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5101

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Vandenbraak v. Alfieri" (2006). *2006 Decisions.* Paper 29.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/29

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5101

PATRICIA VANDENBRAAK, Administratrix of the Estate
of James Michael Vandenbraak; PATRICIA VANDENBRAAK,
individually; PATRICIA VANDENBRAAK, as Next Friend
of Zachary Vandenbraak, a minor; ZACHARY VANDENBRAAK,
a minor; JACQUELYN H. VANDENBRAAK,

Appellants

v.

M.D. ANTHONY ALFIERI; DELAWARE CARDIOVASCULAR
ASSOCIATES, PA

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 01-cv-00482)
District Judge: Honorable Kent Jordan

Submitted Under Third Circuit LAR 34.1(a)
November 27, 2006

Before: RENDELL and AMBRO, <u>Circuit Judges</u>
PRATTER,<sup>*</sup> <u>District Judge</u>

(Filed:  December 22, 2006)

---

<sup>*</sup>Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

OPINION

AMBRO, <u>Circuit Judge</u>

This is an appeal from a judgment entered on behalf of Doctor Anthony Alfieri and his medical practice, Delaware Cardiovascular Associates, in an action alleging that defendants' medical negligence caused the death of James Michael Vandenbraak. The issue is whether defense counsel's misstatement of law during closing arguments sufficiently prejudiced or misled the jury to require a new trial. The District Court determined that it did not, and we agree.

## I.    Facts & Procedural History

Because we write solely for the parties, we note only those facts relevant to our decision. Dr. Alfieri treated Vandenbraak after he suffered a heart attack in 1997. Two years later, Vandenbraak experienced chest pain while on vacation. His wife called a cardiologist at Dr. Alfieri's practice, who advised Vandenbraak to go to the nearest medical facility to be examined. Instead, he scheduled an appointment with Dr. Alfieri for later that week. During that appointment, Dr. Alfieri recommended that Vandenbraak have a stress test at the nearest hospital, and the parties dispute whether the doctor's recommendation was for an immediate stress test or for a test one week later. Vandenbraak scheduled the test for one week later, returned to vacation, and died two days later of a heart attack. His wife and children sued Dr. Alfieri for medical

2

negligence, alleging that the doctor provided sub-standard care, which led to Vandenbraak's death.

The case was tried before a jury and spanned six days. On the last day of trial during his closing argument, defense counsel stated:

> I brought Dr. Calkins in here to tell you what the standard of care was. And one of the problems you have when you bring a person like Dr. Calkins in—Calkins is one of the world's renowned experts. . . .
>
> And the problem you have with folks like Calkins is, you say, they think about the standard of care at a level that's so much higher than what the standard of care requirement is under the law. See, the law sets a minimal standard below which—

Plaintiffs' counsel then objected, arguing that defense counsel misrepresented the expert testimony, as Dr. Calkins said nothing to suggest the standard of care was higher than it actually was. The District Judge instructed defense counsel to correct the statement, to which defense counsel stated, somewhat incoherently, the following:

> The standard of care is a national standard. What we say, it is a standard which is a minimal standard. Under this instruction, it says, you don't have to give care—expect that a doctor will give care that is necessarily above it in order to—let me back up.
>
> In a claim like this, what they say is that you cannot even be a good doctor and still have the standard of care, because it's a minimal standard. And what you have to decide is what the standard of care is. In this particular case, the standard of care is a minimal standard. Care that's rendered above it is acceptable care. It's not malpractice.
>
> Most physicians aspire to practice medicine well above the standard of care, significantly above the standard of care.

Plaintiff's counsel did not object to this restatement or seek a curative instruction.

3

Following closing arguments, the District Judge read final instructions to the jury. Concerning evidence and statements of counsel, he instructed the jury to "consider only the evidence in the case [including 'expert testimony']," and that "what the attorneys say is not in evidence." As for the definition of medical negligence, he instructed as follows:

Under a Delaware statute, a health care provider that does not meet the applicable standard of care commits medical negligence.

The standard of skill and care required of every health care provider in rendering professional services or health care to a patient shall be that degree of skill and care ordinarily employed in the same or similar field of medicine as the defendants, and the use of reasonable care and diligence.

The law requires that a doctor's conduct be judged by the degree of care, skill and diligence exercised by doctors of the same or similar medical specialty, practicing at the same time when the alleged medical negligence occurred.

. . .

Each physician and health care provider is held to the standard of care and knowledge commonly possessed by members in good standing of his or her profession and specialty. It is not the standard of care of the most highly skilled, nor is it necessarily that of average members of this profession, since those who have somewhat less than average skills may still possess the degree of skill and care and treat patients competently.

. . .

You may not guess about the standard of care that applies to Alfred Alfieri, M.D., or whether a departure from that standard resulted in the death of James Michael Vandenbraak. You must consider only the expert testimony, when you determine the applicable standard, decide whether it was met, and—if it wasn't—determine what caused James Michael Vandenbraak's death. If the expert witnesses have disagreed on the applicable standard of care, o[r] whether it was met, or on the question of cause, you must decide which view is correct.

4

During their deliberations, the jury sent a note to the Judge requesting that he "provide advice on how to clearly determine 'standard of care' for providing the 'minimum care.'" The Judge responded that the jury was to follow the jury instructions given at the end of trial. The jury then returned a verdict for defendants.

Plaintiffs filed a motion for a new trial alleging that defense counsel misstated the law and that his misstatement had a reasonable probability of influencing the verdict. The District Court denied plaintiffs' motion, and they appeal to us, alleging that the Court abused its discretion by denying a new trial.

## II. Jurisdiction & Standard of Review

The District Court had diversity jurisdiction under 28 U.S.C. § 1332 because plaintiffs are citizens of the Commonwealth of Pennsylvania and defendants are citizens of the State of Delaware. We have jurisdiction over appeals from final District Court decisions in our Circuit pursuant to 28 U.S.C. § 1291.

We review the District Court's decision "concerning alleged attorney misconduct" for abuse of discretion. *Forrest v. Beloit Corp.*, 424 F.3d 344, 351 (3d Cir. 2005).[1] That

---

[1] Ordinarily, "when [a] party fails to object to [an] improper closing argument, [a] court of appeals only 'retain[s] the authority to review for plain error.'" *Dunn v. Hovic*, 1 F.3d 1371 (3d Cir. 1993) (citation omitted). However, we have not imposed that requirement strictly. For example, we have applied an abuse of discretion standard of review even in cases where there was no objection, on the ground that an objection and curative instruction "may not mitigate the prejudicial effect of counsel's improper statements." *Anastasio v. Schering Corp.*, 838 F.2d 701, 706 n.11 (3d Cir. 1988) (citations omitted). In *Anastasio*, we "consider[ed] counsel's failure to object at trial to what appellate counsel later contended was improper commentary [as] one of the factors bearing on our determination of whether the district judge abused his discretion by concluding that the

standard is deferential because "we recognize that in matters of trial procedure . . . the trial judge is entrusted with wide discretion because he or she is in a far better position than we to appraise the effect of the improper argument of counsel." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 363 (3d Cir. 1999) (quoting *Fineman v. Armstrong World Indus.*, 890 F.2d 171, 207 (3d Cir. 1992) (internal quotation marks omitted)); *see also Forrest*, 424 F.3d at 351 (citing *Greenleaf*, 174 F.3d at 363; *Fineman*, 890 F.2d at 207). A district court abuses its discretion when its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted).

## III.    Discussion

The Federal Rules of Civil Procedure direct courts to examine case law to determine the grounds upon which a new trial may be granted. *See* Fed. R. Civ. Pro. 59(a) ("[A] new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."). The Rules also state that courts may not grant new trials for harmless error. Fed. R. Civ. Pro. 61.[2]

---

statements were not so prejudicial as to warrant a new trial." *Id.* (citations omitted). In our case, plaintiffs objected to defense counsel's first misstatement during his closing argument, thereby preserving the issue for an abuse of discretion review. Similar to the *Anastasio* Court, we consider as one factor in that review that they did not object a second time or request a curative instruction when opposing counsel repeated the misstatement.

[2] Rule 61 states:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for

6

Under the standards laid out in *Draper v. Airco, Inc.*, 580 F.2d 91, 96 (3d Cir. 1978), and clarified in *Fineman*, 980 F.2d at 207, we grant new trials in situations where it is "reasonably probable" that defense counsel's improper remarks influenced the jury verdict. *See also Forrest*, 424 F.3d at 351 (3d Cir. 2005) (citing *Fineman*, 980 F.2d at 207). In *Draper* we concluded that the District Court erred in refusing to grant a new trial because

> [w]here . . . a closing address to the jury contains such numerous and serious violations of so many rules of proper argument as occurred here, we must conclude that it is more than "reasonably probable" that the verdict was influenced by the prejudicial statements. . . . [Moreover,] the curative instruction was not sufficient to remove the probability of prejudice . . . .

*Draper*, 580 F.2d at 96–97 (citation omitted). In *Fineman*, we affirmed a District Court decision denying the motion for a new trial because "not all improper remarks will engender sufficient prejudice to mandate the granting of a new trial." 980 F.2d at 207. Rather than reviewing for "a single instance of impropriety," we take "the argument as a whole." *Id.* at 208.

Plaintiffs argue that defense counsel improperly misstated the law concerning the standard of care for medical negligence, and that his misstatement warranted a new trial because it was "reasonably probable" that he influenced the jury verdict in two ways. First, they assert, defense counsel's statement that the standard of care is a "minimal

---

vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

standard" is prejudicial because, contrary to the District Court's finding that the argument was limited to one improper remark, defense counsel repeated the misstatement after plaintiffs' counsel objected. Second, plaintiffs contend that the Judge's instructions failed to cure the confusion created by the misstatement because the jury requested clarification about the standard of care after he read the instructions.

Plaintiffs' claims are unpersuasive because our case law holds otherwise. As *Fineman* explained, we have consistently held that the amount of alleged improprieties matters for determining whether it is reasonably probable that counsel's arguments are prejudicial. *See Fineman*, 980 F.2d at 208 ("Often, as in the seminal case of *Draper*, a combination of improper remarks [is] required to persuade us of prejudicial impact.") (listing four improprieties that were at issue in *Draper*); *see also Forrest*, 424 F.3d at 352 (no new trial was required for counsel's isolated reference during closing arguments to a prior courtroom demonstration that was subjected to repeated sustained objections); *Waldorf v. Shuta*, 142 F.3d 601, 627 (3d Cir. 1998) (one misuse of a legal term did not warrant a new trial); *Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 264 (3d Cir. 1995) (affirming the district court's grant of a new trial where attorney misconduct "permeated" the trial with more than three separate incidents), *superseded on other grounds by County of Sacramento v. Lewis*, 523 U.S. 833 (1988), *as recognized by United Artists Theatre Circuit, Inc. v. Township of Warrington, Pa.*, 316 F.3d 392 (3d Cir. 2003); *Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1236 (3d Cir. 1994) (a single remark that "took up only a few moments" was insufficient to demonstrate reasonable probability

8

of jury influence); *Salas v. Wang*, 846 F.2d 897, 908 (3d Cir. 1988) (an isolated improper remark will not support the grant of a new trial); *Anastasio*, 838 F.2d at 706 (a new trial is not warranted on the basis of two improper comments made "in the context of an otherwise proper summation and with the benefit of the court's instructions").

When there is a misstatement in closing argument and it is brought to the attention of the trial judge, jury instructions can "sufficiently negate[] any prejudice that might . . . result[] from . . . counsel's errant arguments to the jury." *Edwards v. City of Phila.*, 860 F.2d 568, 575 (3d Cir. 1988). In *Edwards*, part of the Judge's instructions to the jury was that "you are to consider only the evidence in this case," and "statements of counsel are not evidence in this case." *Id.* (internal citations and quotation marks omitted). We determined that

> [t]hese instructions appropriately advised the jury of its responsibilities and, when read in the context of the overall instructions given by the district court, sufficiently negated any prejudice that might have resulted from [defense counsel's] errant arguments to the jury.

*Id.* Here, the District Judge issued jury instructions identical to those in *Edwards*—that the jury was to "consider only the evidence in the case [including 'expert testimony']," and that "what the attorneys say is not in evidence." He then outlined the proper standard of care for medical negligence under Delaware law, and told the jury "not [to] guess about the standard of care," to "consider only the expert testimony . . .," and that "[i]f the expert witnesses have disagreed on the applicable standard of care, o[r] whether it was met, or on the question of cause, you must decide which view is correct." Under

9

*Edwards*, the instructions in this case were sufficient to correct the attorney misstatement. Plaintiffs' assertion that the jury exhibited confusion after the instructions were given does not change our conclusion. When the jury asked for clarification, the Judge pointed it not to defense counsel's closing arguments, but to his instructions that laid out the proper standards. In doing so, he made clear how the jury was to consider the evidence in a way that obviated any reasonable probability of prejudice from counsel's statements.

\* \* \*

This is a tragic case involving the death of a man for which his family seeks some redress. However, what we discuss here was a snippet in a six-day trial. Defense counsel's misstatement was corrected by the Judge after objection, and clarified sufficiently for the jury when it inquired as to the proper standard to apply in its deliberations. In this context, we affirm.