**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-3436
_____

SHARYN SOLOMON,

Appellant

v.

SCHOOL DISTRICT OF PHILADELPHIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No: 2:10-cv-03221)
District Judge:  Honorable Stewart R. Dalzell

_____

Submitted under Third Circuit L.A.R. 34.1(a)
May 23, 2013

Before: RENDELL and GREENAWAY, JR., *Circuit Judges*
and ROSENTHAL[*], *District Judge*.

(Opinion Filed: August 12, 2013)

_____

[*] The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

O P I N I O N

**ROSENTHAL**, District Judge:

Sharyn Solomon alleged that her former employer, the School District of Philadelphia ("School District"), violated federal and state law by refusing to grant her reasonable accommodations after she suffered herniated disks and related back problems. She sued under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.; Section 504 of the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 794; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951, *et seq*.[1] A jury trial resulted in a verdict for the School District. The District Court denied Solomon's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) or for a new trial under Rule 59(a), and Solomon appealed. We have jurisdiction under 28 U.S.C. § 1291. We will affirm.

---

[1] Because the ADA, Section 504, and the PHRA are applied similarly, the term "ADA" is used here to refer to all three statutes. *See Donahue v. Consol. Rail Corp*., 224 F.3d 226, 229 (3d Cir. 2000); *Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 306 (3d Cir. 1999).

# I.

## *Background*

In October 2007, Gina Hubbard, the principal of the school where Solomon worked as a special education teacher, informed her that a new class would be placed in her second-floor resource room and she would be assigned a new upstairs resource room. On October 19, Solomon saw a doctor because of back pain. She was diagnosed some time later with herniated disks, sciatica, and neural foraminal stenosis.

On October 24, Solomon asked Hubbard if she could stay in her present room because it was arranged to her liking and the new room was too small for her materials. On November 9, Solomon began medical leave due to her back condition. She and her doctors asked for a first-floor room assignment based on medical restrictions against climbing stairs. Solomon was not given a first-floor room and did not return to work.

In April 2009, when Solomon's sick-leave benefits expired, she was approved for a one-year sabbatical. When that ended, she applied and was approved for retirement.

Solomon filed this suit in July 2010, alleging that the School District had violated the ADA, the Rehabilitation Act, and the PHRA by failing to provide a

reasonable accommodation for her disabilities, engaging in intentional discrimination, and retaliating against her. After a four-day trial, the jury returned a verdict finding that Solomon had a disability under the ADA but there was no disparate treatment or failure to accommodate. The District Court entered final judgment.

Solomon filed a timely motion to alter or amend the judgment under Rule 59(e) or for a new trial under Rule 59(a). The District Court denied the motion, stating that "there was sufficient evidence to support the jury's verdict, and the challenges that Solomon interposes to our rulings at trial are without merit for reasons already rehearsed at trial." Solomon timely appealed.

## II.

### *The Legal Standard*

A court may grant a new trial after a jury trial under Rule 59(a)(1)(A) "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A). A Rule 59(a)(1)(A) motion should be granted only when "the great weight of the evidence cuts against the verdict and . . . a miscarriage of justice would result if the verdict were to stand." *Springer v. Henry*, 435 F.3d 268, 274 (3d Cir. 2006) (internal quotation marks omitted). The denial of a motion for new trial and to

4

amend a judgment is reviewed for abuse of discretion, but questions of law are reviewed de novo. *Thabault v. Chait*, 541 F.3d 512, 532 (3d Cir. 2008); *Cureton v. Nat'l Coll. Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).[2]

### III.

### *Discussion*

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" with a disability is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A reasonable-accommodation claim requires a plaintiff to show that her employer failed to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . .

---

[2] In this appeal, Solomon also seeks judgment in her favor as a matter of law, citing Rule 59(e). Rule 50 governs a motion for judgment as a matter of law; Rule 59(e) applies to a motion to alter or amend a judgment. Solomon did not "file for judgment as a matter of law both before the case [was] submitted to the jury and after a verdict [was] returned." *Pediatrix Screening, Inc. v. Telechem Int'l, Inc.*, 602 F.3d 541, 546 (3d Cir. 2010). Therefore, we consider the motion only under Rule 59(a) and (e).

employee, unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A).

## A.

### *The Evidence at Trial*

Solomon argues that there was overwhelming evidence that the School District failed to provide her with a reasonable accommodation for her back problems after she and her doctors repeatedly informed the District about medical restrictions preventing her from walking up stairs, carrying objects heavier than five pounds, and bending. Solomon argues that the School District violated the ADA by not responding to her requests, made directly and through her doctors, that she be given a first-floor room instead of the second-floor room she previously had or the upstairs room she was assigned.

There was ample evidence that the School District offered Solomon the use of an elevator to get to her assigned resource room and to go to and from other classrooms, and that this accommodation was reasonable and sufficient. Hubbard testified that Solomon could use the elevator to get to her regular room and to other classrooms where she was needed. Hubbard and Henry Gross, an administrator for the School District's special education programs, testified that Solomon did not

6

need any other accommodation aside from the elevator to perform her job, which did not require her to lift or carry beyond the five-pound limit set by her doctors.

There was also evidence that, in requesting assignment to a first-floor room, Solomon was motivated by other concerns. It was only after Hubbard asked Solomon to move from her second-floor room to a smaller upstairs room that Solomon raised her disability or need for accommodation, citing the room size as the primary reason.

Solomon argues that Hubbard's offer of elevator access was not a reasonable accommodation because it was made before Hubbard learned that Solomon's doctor had told her not to climb stairs. Hubbard testified, however, that when she called Solomon in January 2008 and offered elevator access, she knew of Solomon's stair-climbing restriction. Hubbard testified that she had previously offered Solomon use of the elevator on several occasions. Even if the School District did not then have a complete understanding of Solomon's limits and restrictions, a reasonable jury could have concluded that elevator access was a reasonable accommodation once the School District learned about them.

Solomon argues that the School District violated the ADA because it did not offer her another teaching or administrative position despite acknowledging that she was qualified to hold other positions and that positions were available that

7

could have accommodated her disabilities. Although an employer has a duty to offer a reasonable accommodation to a qualified employee, "an employee cannot make [the] employer provide a specific accommodation if another reasonable accommodation is instead provided." *Hankins v. The Gap, Inc*., 84 F.3d 797, 800–01 (6th Cir. 1996). A reasonable juror could have found that by offering elevator access, the School District had fulfilled its duty under the ADA and was under no obligation to offer the additional accommodations Solomon requested.

Solomon contends that the School District is liable because it did not engage in an interactive process once it learned the extent of her back problem. "[W]hile an employer who fails to engage in the interactive process runs a serious risk that it will erroneously overlook an opportunity to accommodate a statutorily disabled employee, and thereby violate the ADA, failure to engage in the interactive process, in itself, does not constitute such a violation." *Hohider v. United Parcel Serv., Inc*., 574 F.3d 169, 194 (3d Cir. 2009) (internal quotation marks and citation omitted). Because the School District's offer of the elevator reasonably accommodated her disabilities, the "alleged failure to [further] investigate into reasonable accommodation is unimportant." *Gaul v. Lucent Technologies*, 134 F.3d 576, 581 (3d Cir. 1998).

Solomon also argues that the School District required employees to show

8

that they had "no restrictions" before approving them to return to work, and that this violated the ADA. We have held that "plaintiffs [cannot] reach a determination of unlawfulness under the ADA by proving only the existence of a '100% healed' policy, without any inquiry into whether that policy has been used to discriminate against individuals protected by the ADA from such discrimination." *Hohider*, 574 F.3d at 195; *see also Hutchinson v. United Parcel Serv., Inc*, 883 F. Supp. 379, 397–98 (N.D. Iowa 1995) (holding that a "100% healed" policy is a *per se* violation of the ADA but that the plaintiff could not assert that violation because she received individualized treatment despite the policy). Solomon cannot show that a "no-restrictions" policy was applied to her in violation of the ADA.

**B.**

*Challenges to the District Court's Evidentiary Rulings and Jury Instructions*

Solomon contends that the District Court erred in excluding from evidence two letters written by her therapist. The admissibility of evidence is reviewed for abuse of discretion. *Coleman v. Home Depot*, 306 F.3d 1333, 1341 (3d Cir. 2002). The letters were cumulative in light of evidence showing that the School District was aware of Solomon's disability and reasonable accommodation requests, and offered her reasonable accommodation. There is no basis for reversal because "it

9

is highly probable that [any] error did not affect the judgment." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc*., 263 F.3d 296, 329 (3d Cir. 2001).

Solomon also argues that the District Court erred in admitting portions of her deposition testimony at trial. She objected on the basis that the School District did not make timely pretrial designations of the deposition testimony, but the School District was not required to do so for testimony used for impeachment purposes. Solomon also argues on appeal that despite an *in limine* order, the School District included in the deposition excerpts it presented to the jury her testimony about a compromise offer by the School District and her receipt of Social Security disability benefits. *See* Fed. R. Civ. Proc. 68(b); Fed. R. Evid. 408. But the references to the Rule 68 offer and Solomon's disability benefits were brief and isolated. *See Anastasio v. Schering Corp*., 838 F.2d 701, 706 (3d Cir. 1988). The record reflects that when the testimony was presented, Solomon did not ask for a curative instruction. Given the ample evidence that Solomon was offered a reasonable accommodation, any error was harmless.

Solomon argues that the District Court's jury instructions were misleading and provided inadequate guidance for her disparate-treatment claim. The District Court agreed to include a disparate-treatment instruction at Solomon's request, although not with the specific language she submitted. Disparate-treatment claims

10

focus on whether and the extent to which a party is treated differently on the basis of a protected status.  *See, e.g.*, *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797–98 (7th Cir. 1995).  Solomon's claims were based on the School District's failure to grant her an accommodation.  Such a claim challenges actions and policies that are facially neutral.  *See McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004) ("[T]he crux of a reasonable accommodation claim is a facially neutral requirement that is consistently enforced.").  The District Court's inclusion of a disparate-treatment instruction, which Solomon requested, was unnecessary but did not affect the outcome and is not a basis to alter the judgment or for a new trial.

## IV.

### *Conclusion*

Therefore, we will affirm the District Court's denial of Solomon's motion to alter or amend the judgment or, alternatively, for new trial.

11