**Lillie MORRIS, Plaintiff,**

v.

**FRANK IX & SONS, INC., Defendant.**

**Civ. A. No. 79–0063(C).**

United States District Court,
W. D. Virginia,
Charlottesville Division.

March 18, 1980.

Herbert L. Beskin, Charlottesville, Va., for plaintiff.

Christine H. Perdue, Hunton & Williams, Richmond, Va., for defendant.

## MEMORANDUM OPINION

### I. *Introduction*

DALTON, District Judge.

Plaintiff, Lillie G. Morris, filed this action against defendant Frank IX & Sons, Inc., seeking to redress damages suffered by her because of certain actions taken by the defendant leading up to the termination of plaintiff's employment with the defendant. Plaintiff alleges that the defendant employer discriminated against her because of her age in direct violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; that the Defendant's actions breached the plaintiff's contract of employment; and that the defendant's conduct constituted the tort of the intentional infliction of severe emotional distress.

Defendant has filed a Motion for Summary Judgment claiming that there are no genuine disputes regarding material facts; that plaintiff's claims of age discrimination are barred by her failure to file a timely notice of right to sue with the United States Department of Labor and by the applicable statute of limitations; that plaintiff has no claim for breach of contract because her employment was terminable at will; and that plaintiff's claims of intentional infliction of emotional harm are barred by the statute of limitations, § 8–24 of the Code of Virginia, and are in addition precluded by the absence of any facts sufficient to state a cause of action under the applicable Virginia law. Plaintiff contends that her complaint of age discrimination was pursued in a timely manner and is not barred; that her complaint of intentional infliction of severe emotional distress was brought in a timely manner; that there are issues of material facts in controversy; and that defendant is not entitled to summary judgment on any of plaintiff's claims. The issues have been briefed and argued by counsel, and the matter is ripe for disposition.

### II. *Statement of Facts*

#### A. *The Plaintiff's Employment History*

The plaintiff, Mrs. Lillie G. Morris, is a 59 year old widow who lives in Charlottesville,

Virginia. Mrs. Morris was first hired by the defendant, Frank IX & Sons, Inc., ("IX"), in March of 1943 and worked in the weave room at the Charlottesville Textile Plant until March, 1944, when she was laid off. Plaintiff was rehired in July, 1947, and assigned to the throwing department, where she operated 5–B and 10–B machines until she was once again laid off in August, 1951. Mrs. Morris was not recalled until January. Between 1947 and 1976, Mrs. Morris testified that she had been laid off temporarily when work was slack.

In 1976, plaintiff was working on the 10–B machines on the first shift. Mrs. Morris stated that there were occasions throughout this period when the 10–B machines were temporarily shut down, and plaintiff, as well as other employees, were shifted to other jobs, such as grading yarn and winding. Mrs. Morris further testified that she did not work at all through the fall of 1976. Except one week in September. On December 6, 1976, Mrs. Morris was laid off. She was informed by her supervisors that work was slack. Her supervisor also told her to sign up for unemployment, which Mrs. Morris did on December 19, 1976.

Plaintiff was not recalled during the following months. In June 1977, Mrs. Morris was called to the plant to discuss her continued coverage under the group insurance plan. At this time plaintiff was informed by the personnel manager that he had no available work for her.

In July, 1977, after receiving a letter from the Virginia Employment Commission indicating that her unemployment benefits would expire on July 23, 1977, Mrs. Morris called James Marks at the plant to see if she could return to work. Marks told her again that there was no available work. Plaintiff testified that she was quite "upset" after this conversation, but that she did not seek medical or other assistance.

On August 29, 1977, or approximately one month after her conversation with Marks, Mrs. Morris accepted a permanent job at The Towers Hospital in Charlottesville. She worked at The Towers for approximately a month and then took another job at Martha Jefferson Hospital in Charlottesville, effective September 22, 1977. Plaintiff testified that this was also a permanent job and that she has worked continuously at Martha Jefferson since that time.

Upon accepting employment with The Towers and Martha Jefferson Hospital respectively, plaintiff did not notify IX. Representatives of IX only learned of plaintiff's employment sometime after she had gone to work; and upon learning that she was employed elsewhere and had insurance coverage, the process of removing her name from the insurance and employee rolls was begun.[1] Plaintiff was removed from coverage under the insurance plan on November 2, 1977, and a termination form was initiated November 2, 1977, finally dated December 6, 1977, and placed in her personnel file. IX's corporate office was notified that plaintiff had been terminated effective November 2, 1977.

Plaintiff has not reapplied for work at IX and she testified that at the time she accepted employment at The Towers in August 1977, she did not want to return to work at the plant. Plaintiff informed the Department of Labor that she did not want her job back, and by letter of August 14, 1978, her counsel advised IX's plant manager that Mrs. Morris was not willing to return to work with IX.

**B. The Plaintiff's Claims**

By letter dated June 1, 1978, and filed with the United States Department of Labor in Richmond on June 23, 1978, plaintiff complained that her employment had been terminated because of age discrimination. This suit was filed on July 26, 1979.

---

1. Under the Company's layoff procedures, an employee will be carried on the defendant's payroll until 1) the employee is recalled to work at IX; 2) the employee finds other permanent employment, or 3) a period of twelve months elapses from the date of layoff. Pursuant to this policy, Mrs. Morris' recall rights would have terminated at the time she accepted other permanent employment, which occurred prior to the lapse of 12 months from the date of her layoff.

Plaintiff also raises a claim for breach of contract. She has explained the basis for the breach of contract claim as follows:

Plaintiff's contract of employment with defendant is based on the dealings between the parties over a thirty year period. Because of the length of time the contract endured, an implied term arose to the effect that plaintiff would not be discharged except for good cause.

Mrs. Morris has also raised a claim for intentional infliction of emotional harm. This claim is based on alleged assurances made to her by IX supervisors that IX would have a job for her.

### III. Merits of Plaintiff's Claims

A. Plaintiff's Claims of Age Discrimination

The Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 et seq., requires a potential plaintiff to file his complaint with the Secretary of Labor within 180 days after the alleged unlawful practice occurred.[2] See 29 U.S.C. § 626(d)(1). The required filing within the 180 day period has been widely held to be a jurisdictional prerequisite to the filing of a civil action alleging age discrimination. Woodburn v. L.T.V. Aerospace Corp., 531 F.2d 750 (5th Cir. 1976); Quina v. Owens-Corning Fiberglass Corp., 575 F.2d 1115 (5th Cir. 1978); Law v. United Air Line, Inc., 519 F.2d 170 (10th Cir. 1975); Ott v. Midland-Ross Corp., 523 F.2d 1367, (6th Cir. 1975); Edwards v. Kaiser Aluminum & Chemical Sales, Inc., 515 F.2d 1195 (5th Cir. 1975); Black v. Hunter Packing Co., 427 F.Supp. 152 (E.D. Ill.1977); Spencer v. Moore Business Forms, 441 F.Supp. 60 (N.D.Ga.1977); Chappell v. EMCO Machine Works Co., 601 F.2d 1295, 20 FEP cases 1059 (5th Cir. 1979); Larson v. American Wheel and Brake, Inc., 610 F.2d 506, 21 FEP cases 565 (8th Cir. 1979).

Since plaintiff's charge of discrimination was actually filed on June 23, 1978,[3] it is timely only with respect to alleged discriminatory acts which occurred within the 180 day period preceding the filing date; that is, acts which occurred on or after December 25, 1977. Finding that no such acts have been specifically alleged by plaintiff, the court is constrained to conclude that the defendant is entitled to summary judgment as a matter of law.

It is well established that a layoff from employment constitutes a completed act at the time it occurs. Griffin v. Pacific Maritime Assoc., 478 F.2d 1118 (9th Cir. 1973), cert. denied, 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973); Mobley v. Acme Markets, Inc., 473 F.Supp. 851, 20 FEP cases 620 (D.C.Md.1979). Therefore, plaintiff's 180 day limitation period for filing her notice of intent to sue protesting her layoff began to run on the date of her layoff, (i. e. December 6, 1976), and expired around June 6, 1977, more than a year before plaintiff filed her complaint with the Department of Labor. Wagner v. Sperry Univac Division, 458 F.Supp. 505, 19 FEP cases 1567 (E.D.Pa. 1978). Accordingly, plaintiff's claim of discriminatory layoff is time-barred.

It is equally well settled that an employer's failure to recall or rehire an individual after a layoff does not constitute a continuing violation of the Act. Thomas v. E. I. Dupont de Nemours & Co., 574 F.2d 1324 (5th Cir. 1978); Powell v. Southwestern Bell Telephone Co., 494 F.2d 485 (5th Cir. 1974); Law v. United Air Line, Inc., supra; Woodburn v. L.T.V. Aerospace Corp., supra; Wagner v. Sperry Univac Di-

---

2. It should be noted that with respect to claims arising prior to April 6, 1978, the Act required a filing of a Notice of Intent to Sue; the 1978 Amendments eliminated this requirement and substituted the filing of a charge of discrimination. Under either version, however; the potential plaintiff must make his claim within 180 days of the alleged act of discrimination. Age Discrimination in Employment Act, (1978), Pub.L.No. 95–256, § 4(b)(1) and (2), 92 Stat. 189.

3. Mrs. Morris' charge was not received by the Department of Labor until June 23, or 24, 1978. A charge is not deemed "filed" until received by the appropriate governmental agency. Burgett v. Cudahy Co., 361 F.Supp. 617 (D.Kan. 1973); Hughes v. Beaunit Corp., 12 FEP cases 1564 (E.D.Tenn.1976).

*vision, supra; Brohl v. Singer Co.,* 407 F.Supp. 936 (M.D.Fla.1976). Instead, each alleged discriminatory recall constitutes a separate and completed act by the defendant, which triggers a new 180 day period on the date of each such recall. *Reynolds v. Daily Press, Inc.,* 5 FEP cases 4 (E.D.Va. 1972).

■ Under defendant's layoff policy, a laid off employee retains group insurance coverage and recall rights until 1) the employee is recalled by IX; 2) the employee finds other permanent employment; or 3) a period of twelve months elapses from the date of layoff. Pursuant to this policy, all remaining vestiges of plaintiff's employment, including her recall rights, terminated on August 29, 1977, when she took a permanent job at The Towers. Additionally, Mrs. Morris testified that at that time she was no longer interested in returning to work at IX. These events occurred well before the 180 day limitation period preceding the filing of plaintiff's complaint with the Department of Labor. Accordingly, plaintiff's right to complain of alleged discriminatory failure to recall her had lapsed even before the 180 day period preceding her June, 1978, complaint had begun to run. Any such claim is accordingly time barred.

Regarding Mrs. Morris' claim of discriminatory discharge, courts have consistently ruled that the 180 day period commences to run when the employee knows or as a reasonably prudent person should have known that employment was no longer available. *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 192 (3rd Cir. 1978); *Accord, Payne v. Crane Co.,* 560 F.2d 198 (5th Cir. 1977). This should ordinarily occur on the date an employee last performs services for his employer. *Bonham v. Dresser Industries, Inc., supra; Noto v. J. F. D. Electronic Corp.,* 446 F.Supp. 92 (E.D.N.C.1978).

Here, Mrs. Morris performed no services for IX after September, 1976, and was laid off on December 6, 1976. Thus, the 180 day period arguably began to run in September 1976, but clearly no later than the December 6, 1976, layoff date, when she was informed that there was no work for her to do. The layoff effectively severed all of

the plaintiff's non-vested benefits and employment rights with IX, with two exceptions: First the company continued to carry Mrs. Morris under its insurance plan, and second, she retained recall rights until a year from the date of her layoff or until she accepted permanent employment elsewhere, whichever came first.

■ The recall rights did not afford Mrs. Morris any rights to be reemployed; they merely provided for retention of her seniority rights should she be recalled within the year following her layoff. If plaintiff was not recalled within that year or if she accepted another permanent job, her recall rights were automatically terminated. In sum, defendant's recall policy provided Mrs. Morris with an inchoate right to retain her original seniority only if she was recalled. It cannot realistically be argued that such an inchoate right perpetuates the employment relationship when the plaintiff is not in fact working and retains none of the obligations of an employee.

■ In sum, the law is quite clear that the limitation period began to run on December 6, 1976, not only as to Mrs. Morris' layoff but as to her claim of discriminatory termination as well. Even assuming arguendo that the recall rights in some way perpetuated the employment relationship, Morris' complaint of discrimination was still not timely filed. By her own testimony, Morris believed that she had been terminated on July 25, 1977, decided not to return to IX, and accepted permanent employment elsewhere on August 29, 1977, thus automatically terminating her recall rights. Since plaintiff's complaint was filed approximately ten months later, her claim of discriminatory termination is time-barred.

■ In sum, plaintiff has filed her charge of discrimination approximately eighteen months after her layoff, some ten months after she had severed her employment relationship with IX by accepting permanent employment elsewhere, and approximately 233 days after IX officials learned of her employment and removed her name from IX's payroll and insurance rolls.

■ Plaintiff contends that the 180 day notice requirement of 20 U.S.C. § 626(d)(1) is not a strict jurisdictional prerequisite to suit in federal court, and is subject to equitable modification when necessary to effect the remedial purposes of this chapter.[4] Plaintiff further contends that the facts surrounding the filing of her complaint with the Department of Labor,[5] would require the equitable tolling of the 180 day limitation period.

Even assuming arguendo, that the limitation period should be tolled on or about June 1, 1978, the court must still conclude that plaintiff's claims would be time-barred. In the instant case, plaintiff has received no monetary benefits from IX since September, 1976, and no benefits of any sort, insurance or otherwise, after November 2, 1977. *Cf. Moses v. Falstaff Brewing Corp.*, 525 F.2d 92 (8th Cir. 1975) (where the court held that on the last day plaintiff received a tangible monetary benefit, the 180 day notice requirement began to run). Therefore, the court now finds that the last possible day that plaintiff's unlawful termination could have occurred was on November 2, 1977 (approximately 211 days before a filing date of June 1, or 2, 1978), and not December 6, 1977, the date an administrative termination form was finally placed in Mrs. Morris' personnel file.

■ Finally, the court finds noticeably missing from the record any allegations that would justify, on an equitable basis, taking the limitation period protection away from Frank IX & Sons, Inc. That is, the court finds no existing considerations, equitable or otherwise, which would excuse plaintiff's filing of her complaint some 18 months after the layoff and approximately 233 days after the last vestiges of her employment with defendant were terminated. *Quina v. Owen-Corning Fiberglass*, 575 F.2d 1115 (5th Cir. 1978); *Larson v. American Wheel and Brake, Inc.*, 21 FEP cases 565 (8th Cir. 1979).

Accordingly, for the above reasons and based upon the allegations contained in the plaintiff's complaint, the court now finds that defendant is entitled to judgment as a matter of law.

An appropriate order will issue.

■ It should be noted that defendant has moved the court to dismiss the above violations of the ADEA because such claims were not filed with the court within two years of their occurrences as required by 29 U.S.C. § 626(e). This section incorporates the statute of limitations set forth in the Portal-to-Portal Pay Act, 29 U.S.C. § 255(a). Although defendant has accurately cited the two year limitation period for nonwillful violations, the complaint alleges that defendant's actions were *willful* violations of the ADEA. 29 U.S.C. § 255(a) provides that "[A] cause of action arising out of a willful violation may be commenced within *three years* after the cause of action accrued." (emphasis added). Plaintiff's action was filed well within the three year period. Accordingly, defendant's motion to dismiss on this ground is denied.

4. Whether labelled jurisdictional or a statute of limitations, all courts agree that compliance with the 180 day notice requirement under ADEA is a condition precedent to maintenance of a civil action under the Act. *Wagner v. Sperry Univac Div.*, 19 FEP cases 1567 (E.D.Pa. 1978). The courts have been extremely reluctant to toll the notice requirement and only under the most extraordinary circumstances has a late filing been excused. *Skoglund v. Singer Co.*, 403 F.Supp. 797 (D.N.H.1975).

5. On or about June 1, 1978, plaintiff, by counsel, mailed a charge of discrimination to the Department of Labor at an address which counsel got from the central switchboard at the Department of Labor in Washington. This letter was returned to counsel on June 8, 1978, marked "Addressee Unknown." On or about June 23, 1978, counsel mailed the complaint to a Mr. Gilbert C. Parker of the Department of Labor, Richmond, Virginia, at an address again received from the Department of Labor in Washington, D. C., who by letter dated June 27, 1978, forwarded the same to the Department of Labor office in Roanoke, Virginia. By letter dated July 6, 1978, Mr. Alfred H. Perry of the Roanoke Office acknowledged receipt of plaintiff's letter of complaint.

B. *Plaintiff's Claim of Breach of Contract.*

C. *Plaintiff's Claims for Intentional Infliction of Emotional Distress.*

 The issue of whether to accept pendent jurisdiction of these state claims is discretionary with the court.[6] *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Cemer v. Marathon Oil Co.,* 583 F.2d 830, 832 (6th Cir. 1978); *Kennedy v. Mountain States Telephone and Telegraph Company,* 449 F.Supp. 1008 (D.Colo. 1978); *Douglas v. American Cyanamid Co.,* 472 F.Supp. 298 (D.Conn. 1979). Its justification lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. *Erie Railroad Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *Wham-O-Mfg. Co. v. Paradise Mfg. Co.,* 327 F.2d 748, 752–754 (9th Cir. 1964).

For the above reasons, the court will decline to accept pendent jurisdiction of these state claims. An appropriate order will be issued dismissing these claims.

---

6. The requirements for pendent jurisdiction as outlined in *United Mine Workers v. Gibbs, supra,* are as follows:

1) There must be a substantial federal claim; 2) the state and federal claims "must derive from a common nucleus of operative fact"; and 3) the claims are such that the plaintiff would "ordinarily be expected to try them all in one judicial proceeding." A Federal Court's discretionary power to hear pendent state claims lies in "considerations of judicial economy, convenience and fairness to litigants." *Id.,* 383 U.S. at 725–726, 86 S.Ct. at 1138–1139.