**Beverly HERBER, Betty Herring, and Opal McAdams, Plaintiffs,**

v.

**BOATMEN'S BANK OF TENNESSEE, Defendant.**

No. 89–2395–G.

United States District Court, W.D. Tennessee, W.D.

Sept. 24, 1991.

Mark A. Allen, and Deborah E. Godwin, of Agee, Allen, Godwin, Morris & Laurenzi, Memphis, Tenn., for plaintiffs.

Clare Shields, Martin, Tate, Morrow & Marston, P.C., Memphis, Tenn., for defendant.

## ORDER DENYING SUMMARY JUDGMENT AS TO HERBER AND HERRING'S TITLE VII CLAIM AND GRANTING SUMMARY JUDGMENT FOR DEFENDANT AS TO ALL PLAINTIFFS' FAILURE TO REHIRE CLAIMS AND PLAINTIFF MCADAMS'S TITLE VII AND ADEA CLAIMS

GIBBONS, District Judge.

Before the court is the motion for summary judgment of defendant Boatmen's Bank. Plaintiffs Beverly Herber, Betty Herring, and Opal McAdams, all females previously employed in the Branch Division at Boatmen's, allege that they were terminated from employment with the defendant because of their sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Additionally, plaintiff McAdams, who was fifty-nine at the time of her termination, alleges that she was terminated from employment with defendant because of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* As part of their complaint, all plaintiffs allege that the defendant continues to discriminate against them by failing to rehire them from their alleged layoff.

The following facts are not in dispute. In the fall of 1988, Charles B. (Chip) Dudley, III, Chief Executive Officer of Boatmen's, told senior management about a proposed reduction in force (RIF) which would involve restructuring and reorganizing the bank. Dudley assigned to Senior Vice President and Branch Coordinator Carole Novick the task of redesigning the branch system. Her mission was to bring branch personnel closer to the customer, so that sales and service would be priorities. To accomplish this, Novick redefined the sales and service roles of branch personnel.

Before the RIF, the branches were overseen by a Branch Coordinator and a Business Development Manager, while the desk-side personnel of each branch consisted of a Branch Manager, Assistant Manager, Loan Officer, and Customer Service Representative. In the RIF, Novick eliminated the positions previously known as Business Development Manager, Branch Manager, Assistant Manager, and Loan Officer. Although the newly restructured branches would each have a position titled "Branch Manager," the new position would become more responsible for sales while directly supervising all branch personnel.[1]

---

1. The plaintiffs dispute the contention that the duties of the post-RIF personnel changed, but they offer no credible evidence to support this position. As evidence that their positions were not truly eliminated, plaintiffs point to several isolated statements which the court finds unconvincing. First, the plaintiffs argue that Dudley "reluctantly admitted that the ... women were 'replaced' with the three men." An examination of Dudley's deposition demonstrates that no such admission was made. To the contrary, when asked "[t]he truth of the matter is that their jobs were not eliminated, they were replaced, is that correct," Dudley responded, "No, their job was eliminated." Additionally, plaintiffs point to the reaction of Dan Reid when he was informed by Novick that he was to be a new Branch Manager (Reid: "How can you offer me a job that has been eliminated; Novick: "You've got to trust me on this.") as evidence that the duties did not change. Again, no such inference can be drawn from such an ambiguous statement.

A new position, Branch Specialist, was designed to provide total financial services with an emphasis on customer service. Due to the size of the various branches in which each plaintiff worked, the desk-side personnel in their branches would consist of a Branch Specialist I, a Branch Specialist II (who had lending authority), and a Branch Manager. As the number of desk-side personnel was reduced from four to three, fewer people were available to handle customers.

On January 31, 1989, all three plaintiffs were terminated from their employment with Boatmen's and replaced by males. Prior to termination, plaintiff Beverly Herber had been employed as branch manager of the Whitehaven Branch. Plaintiff Betty Herring was branch manager at the Brooks Road Branch. Plaintiff Opal McAdams was assistant manager at the Union Extended Branch. At the time of their termination, all three were informed that their jobs had been eliminated due to a restructuring. After receiving their right to sue letters, plaintiffs filed suit on May 10, 1989.

On October 15, 1990, Boatmen's filed a motion for summary judgment claiming that no genuine issue of material fact exists in this action and that it is entitled to judgment as a matter of law. The plaintiffs then filed a response to that motion which included, among other things, the affidavit of Beverly Herber, the affidavit of Bettye Sargent, and an exhibit containing two lists, one purporting to be an employee list with the birthdays of every employee, and the other purporting to be a list of employees over the age of fifty-five (55). Defendant then filed a motion objecting to the consideration of these items, along with any testimony regarding alleged discrimination against persons who are not parties to this suit.

Federal Rule of Civil Procedure 56 provides that a motion for summary judgment shall be granted if, based on the record as a whole, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In a motion for summary judgment, the moving party "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986).

Pursuant to Rule 56(e), when confronted with a properly supported motion for summary judgment, the non-moving party may not rest upon its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." A genuine issue of material fact exists "if the evidence [presented by the party opposing the motion] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party opposing summary judgment "must do more than simply show there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), but instead must present "concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Cloverdale Equipment v. Simon Aerials Inc.,* 869 F.2d 934, 937 (6th Cir.1989).

■ *1. Title VII Claims.* In a case involving a claim of disparate treatment under Title VII, the plaintiff must demonstrate that she has been a victim of intentional discrimination. *Shah v. General Elec. Co.,* 816 F.2d 264, 267 (6th Cir.1987). This requirement of discriminatory animus can be met with direct or circumstantial evidence. In cases where there is no direct evidence of unlawful discrimination, the United States Supreme Court has designed a framework to analyze the ultimate issue of whether the plaintiff was the victim of intentional discrimination. In such cases, where the defendant's subjective intent is critical, the Supreme Court's framework, as established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of*

*Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), provides a means in which discriminatory motive may be inferred from the mere fact of differences in treatment. The *McDonnell–Burdine* analysis, which defines the burdens which an employment discrimination plaintiff must meet at trial, is equally applicable in the evaluation of a motion for summary judgment. *McKenzie v. Sawyer,* 684 F.2d 62, 71 (D.C.Cir.1982).

■ Under *McDonnell,* the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. To meet this burden, the plaintiff must show (1) claimant is a female; (2) claimant is qualified for the position to which she seeks to be rehired; (3) plaintiff was subjected to an adverse employment decision; and (4) the position to which claimant seeks to be rehired was filled by a male. *McDonnell,* 411 U.S. at 802, 93 S.Ct. at 1824.

■ If the plaintiff succeeds in establishing a *prima facie* case, an inference of unlawful discrimination is raised. Then the burden of production shifts to the defendant to clearly set forth a legitimate nondiscriminatory reason for the alleged discriminatory conduct. *Mills v. Ford Motor Co.,* 800 F.2d 635, 637 (6th Cir.1986). If the defendant successfully meets this burden, the plaintiff must prove, by a preponderance of the evidence, that the asserted reasons were merely pretexts for discrimination. *Id.; Peterson v. King Tree Center, Inc.,* 722 F.Supp. 360, 362 (S.D.Ohio 1989), *aff'd,* 896 F.2d 1369 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990).

■ Analyzing the evidence presented in the Title VII claims, plaintiffs Beverly Herber and Betty Herring have presented evidence creating a genuine issue of material fact. Defendant contends that Herber and Herring fail to establish even a *prima facie* case of discrimination because they cannot show that they were qualified to be Branch Managers as that position was redefined. The defendant contends that as redefined, the Branch Manager's position required increased sales ability, and neither Herber nor Herring could meet this qualification. The plaintiffs counter by arguing that sales ability was not the real basis of the decision, but only a pretextual justification. The court finds that when the evidence is considered in the light most favorable to the plaintiffs, a genuine issue of material fact exists as to whether this proffered reason was pretextual and also therefore concerning these plaintiffs' qualifications for the new positions. Because of the relationship between the qualifications issue and the claim of pretext, the *prima facie* case issue becomes intertwined with the issue of whether there is sufficient proof to create a genuine issue of fact as to the ultimate issue of intentional discrimination.

■ Defendant asserts that the Branch Manager's position required a proven sales record, and to determine who was the most qualified Novick relied upon the number of documented business development calls made by the various Branch Managers. Using this reasoning, defendant claims, Novick chose Larry Lambert over Herring.[2] Under an earlier draft of the RIF, however, Novick had proposed that Herring be replaced by Clarence Moseley, a male, and that Lambert be terminated.[3] When asked why she felt Moseley was more qualified than Herring, Novick replied "[b]ecause he had exhibited strong customer service

**2.** It is undisputed that Lambert documented 136 business development calls in 1988 and Herring only 51.

**3.** Defendant objects to the consideration of testimony regarding the alleged discrimination against persons not parties to this suit. Citing testimony concerning Sally Snoddy, a female, and Lambert, a male, as examples, defendant argues that references to alleged discrimination against other employees are irrelevant. Though the defendant does not specify which references concerning Lambert it finds objectionable, the plaintiffs clearly do not rely on any alleged discrimination towards him, since Lambert was made Branch Manager of the Brooks Road branch in the RIF. The court notes, however, that evidence of discrimination against other employees may on occasion be probative of whether a defendant's employment action against a plaintiff employee was motivated by intentional discrimination.

skills." Novick Dep. at 102. Upon further questioning, however, Novick admitted that two customer complaints had been registered against Moseley and that he had been accused of several serious banking irregularities.

According to Novick, Moseley was originally to replace Herring because of Moseley's strong customer service skills. However, Novick never cited any problem with Herring's customer service skills.[4] Furthermore, Lambert was to be terminated under this earlier proposal despite his excellent business development record. Though the proffered reason for Lambert's ultimate selection was sales ability, there is a question as to whether the earlier determination was made on this criterion. Accordingly, a genuine issue of fact exists as to whether defendant's claim that Herring was rejected because of sales ability was the real motivation for the decision.

Since sales ability was also given as the justification for replacing Beverly Herber with Tommy Hill, a male, the same issue of fact exists as to whether sales ability was the real motivation for her termination. As with Herring, a reasonable trier of fact could conclude that sales ability was offered only as a pretextual basis for the termination.

■ Plaintiff Opal McAdams's Title VII claim does not survive summary judgment. Defendant again argues that McAdams cannot establish a *prima facie* case of discrimination because she cannot show that she was qualified for the Branch Specialist position. The court agrees, and unlike Herber and Herring, McAdams cannot raise a genuine issue of material fact as to pretext. Accordingly, summary judgment is appropriate on McAdams's Title VII claim.

After the RIF, the job description for a Branch Specialist required "the delivery of excellent customer service" and "proven customer service and customer relations skills." *See* Dudley Dep. Ex. 3. As previously noted, the branches would have one less desk-side person to serve customers, and the amount of customer contact for each would therefore increase. Accordingly, Novick thought that "service quality" was of the "utmost importance" and determined that McAdams was not qualified for the Branch Specialist position. Novick Dep. p. 141. The adequacy of McAdams' performance in her former position is of little probative value, as that job was eliminated and a new one created. *See Komel v. Jewel Companies,* 874 F.2d 472, 474 (7th Cir.1989); *Earley v. Champion International, Inc.,* 907 F.2d 1077, 1082 (11th Cir. 1990).

As it is undisputed that McAdams had more documented customer complaints than anyone else in the branch system, Novick Dep. p. 133, McAdams cannot show that she was qualified for the Branch Specialist position. Furthermore, she cannot show that the proffered reason for her lack of qualification was pretextual. Unlike Herber and Herring, there is no evidence that McAdams was judged by criteria different from others considered for the same position and no evidence that her gender played any factor in the decision. To overcome this failure, plaintiff McAdams tries to rely on what might be termed statistical evidence showing few women in high level positions in the bank.

Plaintiffs submit the affidavit of Beverly Herber as evidence that "[d]efendant has a discriminatory policy disfavoring placing women in higher paying positions." Specifically, the affidavit states that "[w]hile the majority of bank employees have been female, the percentage of women decreases as employees progress in the bank hierarchy, salary and status. Virtually all tellers, clerical and operational employees in the lower pay and salary grades are female." Defendant objects to the admissibility of this affidavit on the grounds that the document is irrelevant and does not affirmatively show that the affiant is competent to testify.

---

**4.** To the contrary, Novick praised Herring's customer service skills on a December 8, 1987, form recommending that Herring be promoted to Vice President. *See* Exhibit 5 to Novick's Deposition.

■ Assuming the admissibility of the Herber affidavit, it does not create a genuine issue of material fact. A party cannot create a factual issue by filing an affidavit in contradiction to earlier deposition testimony after a motion for summary judgment has already been made. *Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 315 (6th Cir.1989). In her deposition, Herber testified that she was aware of no information about Boatmen's conduct, other than the terminations of Herring and McAdams, which would lead her to believe that she was a victim of discrimination. She cannot create a factual issue, therefore, by filing a contrary affidavit after the filing of the summary judgment motion.

■ Apparently trying to make out a pattern or practice case, plaintiffs seem to regard this affidavit as providing statistic-like evidence of discrimination. The court, however, finds this evidence to be wholly unpersuasive as a party cannot make out a fact issue by mere conclusory allegations and assertions. *Earley*, 907 F.2d at 1081. *See Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (usefulness of statistics depends on all facts and circumstances); *Scott v. City of Anniston, Alabama*, 430 F.Supp. 508 (N.D.Ala.1977), *aff'd in part, rev'd in part*, 597 F.2d 897 (5th Cir.), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1979) (weight to be given inferences raised by statistics varies according to the correctness, completeness, and comprehensiveness of the figures proffered). Moreover, the fact that few women were employed in high level positions at Boatmen's is simply insufficient to raise a genuine factual issue as to whether intentional discrimination based on sex motivated McAdams' termination.

■ Next, plaintiffs argue that a material issue of fact is created concerning the role played by Larry Presley, Director of Human Resources for defendant. Through discovery, plaintiff obtained a worksheet used by Presley in the RIF. This worksheet listed the people to be terminated in the RIF, pointed out instances in which a discrimination suit was likely, and noted next to individual names that the decisions had to be substantiated based on objective criteria. Plaintiffs argue that this document is a "smoking gun" which provides evidence of pretext. The court disagrees.

The testimony shows that Presley created this worksheet only after he was given a proposed list of terminations from Novick. Novick Dep. p. 76. He testified that the worksheet was for his own use in determining that the requirements of the law were met. As has been noted by the Supreme Court, exhorting managers to act based on qualifications is the essence of compliance with Title VII. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 243, 109 S.Ct. 1775, 1786, 104 L.Ed.2d 268 (1989). Therefore, plaintiff McAdams fails to raise a genuine issue of material fact and her Title VII claim is dismissed.

■ 2. *Age Discrimination Claim.* Plaintiff McAdams has an even more stringent burden to make out an ADEA claim. An employee discharged as part of a RIF [5] may not rely on the *McDonnell Douglas* framework to establish a *prima facie* case of age discrimination. *See LaGrant v. Gulf & Western Mfg. Co., Inc.*, 748 F.2d 1087, 1090 (6th Cir.1984). Instead, the plaintiff must offer additional "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out

5. Plaintiffs question the motivation for the RIF. There is no evidence however, of a discriminatory motivation for the RIF. Lambert testified that as a post-RIF Branch Manager, he was more involved in the day to day operations of tellers and that the bank put greater emphasis on sales, though he had less time to make sales calls. Likewise, another post-RIF Branch Manager testified that he was more responsible for sales calls after the RIF. Additionally, Lambert's greater involvement in the day to day operations of tellers is completely consistent with Novick's testimony about the new structure. She stated that while pre-RIF all of the branch personnel reported to the Assistant Manager, post-RIF the Branch Manager would completely supervise all branch personnel. Novick Dep. p. 57–59. *See Barnes v. Gencorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990) ("a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work").

the plaintiff for discharge for impermissible reasons." *Barnes v. Gencorp Inc.*, 896 F.2d 1457 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990).

In addition to the evidence already considered, McAdams offers two documents which she contends present evidence of discrimination. The court disagrees. Since plaintiff McAdams has presented no evidence that her age played any role in the defendant's decision, summary judgment as to the ADEA claim is granted.

■■■ First, McAdams offers the affidavit of Bettye Sargent.[6] Sargent states that on January 27, 1989, when she was fifty-nine years old, she was fired from her position in the Operations Division of Boatmen's by Eddie Grubbs, a Senior Vice President, and offered a job in Super Set, a club for customers age 55 and over. When he offered the job to her, Grubbs purportedly stated that Sargent was in the age group and could relate to the people. Defendant objects to the consideration of this affidavit for purposes of this summary judgment proceeding on grounds of relevance. The defendant argues that a statement made by a manager of the Operations Division to an Operations employee is irrelevant in a discrimination suit by Branch Division employees who were terminated by the Branch Coordinator. The court finds that even if the affidavit is relevant and therefore admissible, it does not create a genuine issue of material fact.

In *Gagne*, 881 F.2d 309, the court found that a "solitary remark" made by the plaintiff's immediate supervisor that he "needed younger blood" was insufficient to create an issue of material fact which would preclude entry of summary judgment in favor of the defendant. Citing *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 n. 2 (6th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987) the *Gagne* court held that such statements "are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age dis-

crimination." Therefore, where the solitary remark of the plaintiff's immediate supervisor was too abstract to create a genuine issue of material fact, a remark by the supervisor of a different division to a non-plaintiff is clearly too far removed from McAdams.

Plaintiff tries to answer this argument by asserting that Chip Dudley and Larry Presley, the defendant's Director of Human Resources, were in fact involved in the decision to terminate both Sargent and the plaintiffs. The court finds, however, that the plaintiff has not submitted proof sufficient to permit a finder of fact to draw this conclusion.

In deposition testimony, Larry Presley clearly stated that as Director of Human Resources, it was not his role to decide who was to be terminated. Rather, his function was to ensure that in any termination the requirements of the law were met. As to the plaintiffs, therefore, Presley flatly stated that he played no role in the selection of who was to be terminated. Furthermore, as to Bettye Sargent, his testimony supports the contention that he played only an oversight role. Accordingly, the court finds that plaintiffs have failed to submit evidence that Presley was involved in the termination of both the plaintiffs and Sargent.

Dudley admitted that he made the final decision concerning plaintiffs' termination. Plaintiffs fail, however, to take the next step and show that Dudley was also involved in the termination of Sargent. The record is utterly devoid of any connection between Dudley and the Sargent termination. The court cannot infer that Dudley was involved merely because he is the Chief Executive Officer. Accordingly, plaintiffs' arguments about Presley and Dudley fail to connect Sargent to plaintiffs so as to create a genuine issue of material fact concerning age-based discrimination.

■■■ Next, McAdams offers two lists, one purporting to be an employee list with

**6.** As originally filed with Plaintiffs' Response and Opposition to Defendant's Motion For Summary Judgment, Sargent's affidavit was not in legally proper form. The mistake was corrected, however, when a proper affidavit was filed.

the birthdays of every employee, and the other purporting to be a list of employees over the age of fifty-five (55). The defendant objects to the consideration of these lists and argues that they are inadmissible. The court finds that even assuming the admissibility of the proffered lists, they also fail to create a genuine issue of material fact.

Plaintiff relies on *Anastasio v. Schering Corp.*, 838 F.2d 701 (3d Cir.1988) for the proposition that lists enumerating the ages of defendant's employees are relevant in proving that age was a factor in the defendant's employment decisions. The court finds that the plaintiff's reliance on *Anastasio* is misplaced. Though the *Anastasio* court did consider such evidence relevant, there was specific evidence which linked the list to the supervisor who made the termination decision. There, the plaintiff came forward with evidence that the plaintiff's supervisor had written the birth month and year on management summaries for each manager who reported to him, and that the management summaries were used by the supervisor in the termination process.

In the present case, however, McAdams has failed to show that the lists were used by Novick in making her decision. Indeed, there is no evidence that Novick was even aware of their existence. Though Plaintiff apparently believes that such a connection exists because the lists were produced as part of a discovery request seeking "[a]ny written criteria utilized to select individuals for lay-off," the court is not willing to take that leap. The plaintiffs had the opportunity to establish that Novick used the lists through deposition testimony and failed to do so. There is no evidence as to who possessed these lists, where they were kept, or for what they were used. Furthermore, a close examination of the discovery request shows that these lists could have been produced pursuant to a different request. In their Notice of Depositions of May 10, 1989, the plaintiff requested, in addition to that noted above, any "[l]ist of employees laid-off, including their age, sex, and job titles," and "[p]ersonnel files and all other information regarding the employ-

ment" of several listed people. It does not automatically follow, as plaintiffs would have the court believe, that the list was used in the RIF.

In *Stendebach v. CPC Intern., Inc.*, 691 F.2d 735 (5th Cir.1982), *cert. denied* 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983), the plaintiff offered a list containing the ages of employees as evidence of age discrimination. There, the court found that no reasonable jury could have concluded that the plaintiff's age was a factor in the defendant's termination decision where there was no evidence that the list was used by the committee in charge of the termination or that the contents or existence of the list in any way influenced their decisions. *Id.* at 738. Since, without this connection, no reasonable jury could find that the decision was motivated by age, there is no triable issue of material fact created by the lists.

■ 3. *Failure to Rehire.* As part of their complaint, plaintiffs allege that the defendants failure to rehire them constitutes continuing discrimination. Their EEOC charge, however, dealt only with the defendant's decision to terminate the plaintiffs as part of the RIF and did not refer to the defendant's subsequent decision not to rehire them. Accordingly, the court finds that summary judgment is appropriate as to the failure to rehire claim, and that claim is dismissed.

Pursuant to 29 U.S.C. § 626(d), an EEOC charge must be filed as a predicate for a civil suit. Liberally construing the plaintiffs' charges in this case, the court finds allegations regarding the terminations resulting from the RIF, but no mention of any continuing violations by the defendant. *See Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985).

The termination resulting from the RIF was a single act which occurred on January 31, 1989. It is well established that such a termination constitutes a completed act at the time it occurred, and that an employer's failure to rehire does not constitute a con-

tinuing violation of the ADEA. *See Thomas v. E.I. DuPont de Nemours & Co.*, 574 F.2d 1324 (5th Cir.1978); *Morris v. Frank IX & Sons, Inc.*, 486 F.Supp. 728, 732 (W.D.Va.1980); *Griffin v. Pacific Maritime Association*, 478 F.2d 1118, 1120 (9th Cir.), *cert. denied*, 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973) (layoff is not a continuing violation). Since the plaintiffs have not properly alleged a failure to rehire, the dismissal of that claim is appropriate.

For the above stated reasons, the court denies summary judgment as to Herber and Herring's Title VII claim, and grants summary judgment for defendant as to the failure to rehire claims and the Title VII and ADEA claims of plaintiff McAdams.

IT IS SO ORDERED.