Sue LONG, Plaintiff,

v.

OWENS CORNING, Defendant.

No. Civ.A. 01–2450–KHV.

United States District Court,
D. Kansas.

Aug. 14, 2002.

Albert F. Kuhl, Lenexa, KS, for Plaintiff.

Douglas C. McKenna, Amy N. Loth, Lewis, Rice & Fingersh, L.C., Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Sue Long brings age discrimination claims against Owens Corning under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* This matter comes before the Court on *Defen-* *dant's Motion For Summary Judgment* (Doc. # 25) filed June 6, 2002. For reasons stated below, the Court sustains defendant's motion.

### Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *See Applied Genetics,* 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. *See Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Facts

The following facts are either uncontroverted or construed in a light most favorable to plaintiff.

Plaintiff is 60 years old. In 1969, she began working as a teletype operator in the production planning department of the Owens Corning insulation plant in Kansas City, Kansas. In 1984, plaintiff began working as an MCMS[1] administrator. She remained in this job until March 2001, when Owens Corning eliminated the position and terminated her employment. At the time, plaintiff was 59 years old—the second oldest salaried worker at the Kansas City plant. The oldest salaried employee was Jan Graham Enge, who worked as an advanced administrator.

In 1997, Owens Corning began using an integrated computer system called SAP. The SAP system incorporated different areas (including maintenance, purchasing and accounting) into one computer system. Beginning in 1999, plaintiff used SAP to perform administrative duties. Plaintiff also ran reports regarding costs, man-hours and related subjects and submitted technical information to execute material purchases within the system. During 2000, plaintiff's SAP task volume did not change in any way.

Before November 1999, the Kansas City plant had three and a half lines. In November 1999, the Kansas City plant lost its J–6 line.[2] The following year, in 2000, Owens Corning filed for bankruptcy protection under Chapter 11. It also undertook an organizational effort to cut administrative costs.[3] In March 1999, Kit McElroy had become the maintenance leader at the Kansas City plant, and he supervised plaintiff. McElroy was involved in a brainstorming effort to cut costs, but he did not propose to eliminate plaintiff's position.

In March 2000, as part of its restructuring, Owens Corning eliminated the position of plant manager administrator, which Connie Collier had held. Owens Corning transferred Collier to supply chain specialist, a position which she holds today. Collier is eight years younger than plaintiff.[4]

---

1. The record does not reveal the meaning of MCMS.

2. The record does not describe the J–6 line or the amount of work or revenue which Owens Corning lost when it lost the J–6 line.

3. From 1986 to March 2001, defendant reduced the number of salaried (non-bargaining unit) employees from over 100 to 32.

4. Plaintiff asserts that she was qualified to perform the duties of supply chain specialist but that defendant did not consider her for the position. Plaintiff does not demonstrate how this fact is relevant to her claims in this case. Plaintiff does not contend that she applied for (or wanted) the supply chain specialist job in March 2000 or at any other time.

After March 2000, Owens Corning assigned the Natural Leadership Team ("NLT") to decide how to reduce costs and expenses at the Kansas City plant. The NLT, which generally met once a week, included McElroy, Doug Healy (human resource leader), Pete Scharfenberg (plant leader), Bob Randall, Bob Jeffries, Sandy Dolence, Deb Strahm and Kip Hussman.[5] In the summer of 2000, a subgroup of the NLT—comprised of Healy, Dolence and Jeffries—assessed all administrative tasks performed by salaried administrative personnel. Their purpose was to identify overlapping duties and evaluate whether the Kansas City plant could eliminate some administrative tasks or assign them to corporate headquarters or hourly bargaining unit employees. The subgroup asked six to eight employees—including plaintiff and Enge and possibly Collier, Don Gansart (advanced environmental (EHS) specialist) and Bill Parks[6]—to report their tasks.

■ As part of the NLT task study, McElroy asked plaintiff to identify the amount of time she spent on various tasks. McElroy told plaintiff that she should "not look at this as an exercise in who we can cut," Exhibit i, *Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment ("Plaintiff's Memorandum")* (Doc. # 30) filed June 19, 2002, and plaintiff provided a detailed written response to McElroy's request.[7]

On two occasions in 2000, Dolence approached plaintiff in the ladies restroom and asked her when she would retire and how much longer she planned to work. Dolence claimed to have heard that plaintiff planned to retire at the end of the year. On a separate occasion in 2000, Strahm asked plaintiff whether she was eligible to retire. When plaintiff responded yes, Strahm asked her why she did not do so. None of the other NLT members (McElroy, Healy, Scharfenberg, Randall and Jeffries) talked to plaintiff about her age or retirement plans.

In the late summer or fall of 2000, the NLT subgroup recommended that two salaried positions be eliminated: MCMS administrator (plaintiff's position) and advanced administrator (Enge's position).[8] The NLT concurred and recommended that the two positions be eliminated.[9] The

---

5. The record does not identify the positions of Randall, Jeffries, Dolence, Strahm and Hussman.

6. The record does not reveal Parks' position or the ages of Parks or Gansart.

7. After plaintiff had given McElroy her task information, she found a document which someone had left at a copy machine that she routinely used. The document stated:

> Proposed HRR [sic] Agenda ....... Rough Draft!!!!!!!!
>> Big picture look
>> degree issue
>> age issue
>> been in KC for entire career issue
> Who are the people who can win the war .... who can't
> Deal with the "35 year olds" who aren't making strong impact
>> How do we make movement happen
>> How are we for Advantage 2000. Issues?
>> Prism exercise
>> NEED TO SET A DATE!!!!

Exhibit iii, *Plaintiff's Memorandum.* The Court does not consider this document, however, because plaintiff provides no foundation for its admissibility in evidence. *See, e.g., Orr v. Bank of Am.*, 285 F.3d 764, 773–74 (9th Cir.2002). Plaintiff admits that she does not know the purpose of this document or who authored it.

8. The record is unclear regarding when the NLT subgroup made its recommendation to eliminate the two positions. Based on the timing of other events, the Court concludes that it was in the late summer or fall of 2000.

9. The record is unclear regarding when the NLT made its recommendation to eliminate

NLT also considered whether to eliminate the jobs of Collier and Patty Scarborough, but it decided not to do so. Defendant contends that in deciding which jobs to eliminate, the NLT did not discuss or consider age.

On October 12, 2000, Healy transmitted materials to Pat Lynch, in-house attorney, and Tony Justice, human resource representative, at Owens Corning headquarters in Toledo, Ohio. The information identified potential employees for job elimination and gave their corresponding birth dates. The record does not reveal who made the final decision to eliminate the two positions, or when it was made, but Owens Corning ultimately made the decision to eliminate the two positions.

In late 2000 or early 2001, McElroy informed plaintiff that based in part on the task information which she had provided for the NLT study, Owens Corning had decided to eliminate her position.[10] Plaintiff had not announced any intention to retire before she learned that Owens Corning planned to eliminate her job. Plaintiff knew that defendant was restructuring, however, and trying to cut down or eliminate jobs in the Kansas City plant. On Friday, February 2, 2001, McElroy sent an e-mail which invited fellow employees to stop by the following Monday "to wish [plaintiff] well as she retires from [Owens Corning]." Exhibit iv, *Plaintiff's Memorandum.* The e-mail represented that plaintiff was retiring, when in fact Owens Corning was eliminating her position.

In March 2001, Owens Corning eliminated the positions held by plaintiff and Enge—the two oldest salaried workers in the Kansas City plant.[11] It did not terminate plaintiff's employment for performance reasons. In fact, Owens Corning contends that it eliminated the positions to save money.

Although Owens Corning does not have a rule against salaried part time employees, it did not consider offering part time employment to plaintiff or Enge. Plaintiff would have continued working if Owens Corning had offered her full or part time work. As it was, she did not ask for reassignment and, after she lost her job, she did not apply for any other jobs at the Kansas City plant. The plant job board posted available jobs, but plaintiff did not communicate with anyone at Owens Corning about any job posting.

Defendant did not replace plaintiff. It transferred her non-SAP tasks to "out-of-unit" employees, *i.e.* union workers, and her SAP work to three hourly maintenance workers who worked under McElroy (Cliff Dunfee, Gary Dunnivan and John Grecco, all of whom are in their late 40s to mid 50s). Defendant also eliminated some SAP reports which plaintiff had generated.

### Analysis

▮ Defendant asserts that plaintiff cannot establish a prima facie case of age

---

the two positions. Based on the timing of other events, the Court concludes that it was in the late summer or fall of 2000.

**10.** The record does not reveal when McElroy told plaintiff that Owens Corning was eliminating her job. Based on the timing of other events, the Court concludes that it happened in late 2000 or early 2001.

**11.** Defendant contends that in June of 2001, it eliminated Gansart's position of advanced en-

vironmental (EHS) specialist as part of the same reduction in force. Plaintiff, however, presents evidence that defendant decided to eliminate Gansart's position after it decided to eliminate her position and that of Enge. *See* Exhibits B–1 and v, *Plaintiff's Memorandum.* For purposes of this motion, the Court accepts plaintiff's evidence and assumes that the reduction in force at issue in this case involved only the positions of plaintiff and Enge—the two oldest salaried employees in the Kansas City plant.

discrimination. Because plaintiff relies on indirect evidence of discriminatory intent, the Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this approach, plaintiff initially bears the burden of production to establish a prima facie case of age discrimination. *See id.* at 802, 93 S.Ct. 1817. To carry this burden in a reduction in force ("RIF") case, plaintiff must show that (1) she is within the protected age group; (2) she performed satisfactory work; (3) defendant discharged her despite adequate work performance; and (4) the record contains some evidence that in reaching its decision, defendant intended to discriminate. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir.), *cert. denied*, 525 U.S. 1054, 119 S.Ct. 617, 142 L.Ed.2d 556 (1998).

■ Defendant contends that plaintiff cannot show the fourth element, evidence of an intent to discriminate. To meet this requirement, plaintiff need not produce evidence that age was a determining factor in defendant's decision. *Beaird*, 145 F.3d at 1167.[12] Rather, plaintiff can satisfy the fourth element with evidence that her "employer fired qualified older employees but retained younger ones in similar positions." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir.1988). In *Beaird*, the Tenth Circuit explained that the fourth element in a RIF case "should be understood to parallel the fourth element of *McDonnell Douglas* by eliminating 'lack of vacancy' as a legitimate non-discriminatory motive for the employment decision." *Beaird*, 145 F.3d at 1167. The

appellate court further noted that "[o]f course, in a RIF case, the plaintiff cannot actually point to a continuing vacancy because her position has been eliminated. She can, however, point to circumstances that show that the employer could have retained her, but chose instead to retain a younger employee." *Id.*

Even construed in the light most favorable to plaintiff, the record in this case does not support an inference that defendant treated younger employees in comparable positions more favorably than it treated plaintiff. Plaintiff asserts that defendant gave more favorable treatment to Collier, who was eight years younger, because it transferred Collier to the position of supply chain specialist in an earlier reduction of force, in March of 2000. Plaintiff notes that defendant did not offer her continued employment (full or part time) when it eliminated her position in March of 2001. Plaintiff, however, points to no evidence that she and Collier were similarly situated or that defendant had an available position which plaintiff could perform in March of 2001.

■ Plaintiff argues that the fourth element is satisfied by the fact that defendant eliminated the positions of its two oldest salaried workers. The Court disagrees. Plaintiff must show facts which demonstrate that defendant treated similarly situated younger employees more favorably. *See Saeli v. Motorola, Inc.*, 917 F.Supp. 589, 594 (N.D.Ill.1996). She has not done so.

The same analysis applies to plaintiff's argument that younger employees contin-

---

12. The *Beaird* court noted that to require plaintiff to produce evidence that age was a determining factor "would effectively fuse the prima facie and pretext steps of *McDonnell Douglas* and 'obviate[ ] the central purpose behind the *McDonnell Douglas* method,

which is to relieve the plaintiff of the burden of having to uncover what is very difficult to uncover—evidence of discriminatory intent.' " *Beaird*, 145 F.3d at 1167 (quoting *Oxman v. WLS–TV*, 846 F.2d 448, 454–55 (7th Cir. 1988)).

ued to perform her duties. The undisputed facts reveal that defendant transferred plaintiff's duties to union members and hourly maintenance workers. Plaintiff presents no evidence that she was similarly situated to these employees. Thus she has failed to establish a prima facie case.

■ Moreover, even if plaintiff satisfied the elements of a prima facie case, she has not presented sufficient evidence of pretext. Defendant articulates a facially nondiscriminatory reason for its actions— that based on the results of the NLT administrative task analysis, it eliminated plaintiff's position as part of an overall RIF to reduce costs. In order to avoid summary judgment, plaintiff would have to present evidence from which a reasonable jury might conclude that defendant's proffered nondiscriminatory reason is pretextual, that is, "unworthy of belief." *Beaird,* 145 F.3d at 1165 (quoting *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)). Plaintiff may show pretext by demonstrating that (1) her termination is inconsistent with defendant's RIF criteria; (2) defendant deliberately falsified or manipulated her evaluation under its RIF criteria; or (3) defendant's alleged RIF is a sham. *See Beaird,* 145 F.3d at 1168.[13]

While plaintiff acknowledges the three common areas of pretextual evidence, she presents no evidence as to any category. *See Plaintiff's Memorandum* at 13–14. In other words, plaintiff presents no evidence which discredits the NLT recommendation to eliminate her position based on its administrative task analysis. Instead, plain-

tiff argues that the following evidence demonstrates pretext: (1) Strahm and Dolence's remarks to plaintiff regarding retirement; (2) defendant's more favorable treatment of Collier; (3) the fact that defendant terminated its two oldest workers; and (4) McElroy's e-mail which indicated that plaintiff was retiring. Even when viewed in the light most favorable to plaintiff, this evidence is not sufficient to support a finding of pretext.

Plaintiff offers no evidence to contradict defendant's evidence that it eliminated her position as a result of the administrative task study. The fact that Strahm and Dolence inquired about her retirement plans and that McEaly sent an e-mail which stated that plaintiff was retiring does not demonstrate animus towards age or suggest that age was a factor in defendant's decision. *See EEOC v. MCI Int'l Inc.,* 829 F.Supp. 1438, 1449, 1465 (D.N.J. 1993). In addition, while plaintiff has presented evidence that she was qualified to perform Collier's position of supply chain specialist, this argument misses the mark.[14] To the extent plaintiff argues that defendant treated Collier more favorably because it transferred Collier to another position when it eliminated her position in March 2000, plaintiff has not shown that she was qualified for any positions which were available when defendant eliminated her own position in March 2001. Finally, the fact that defendant selected its two oldest employees for termination is not alone sufficient to demonstrate age discrimination.[15] *See Hemmert v. Quaker*

---

**13.** The Tenth Circuit has not foreclosed other methods of demonstrating pretext, but it notes that most plaintiffs' arguments will fit within these three categories. *See id.* at 1168 n. 6.

**14.** The relevant question is whether, under the administrative task analysis, defendant should have eliminated Collier's position in-

stead of plaintiff's position. Plaintiff presents no evidence on this point.

**15.** Plaintiff does not argue that Healy's list of potential employees for job elimination, which he transmitted to human resources with a list of corresponding birth dates, is evidence of pretext. Regardless, the record contains no evidence that the NLT used the

Oats Co., 157 F.Supp.2d 864, 873 (S.D.Ohio 2000). Accordingly, defendant is entitled to summary judgment on this record.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 25) filed June 6, 2002 be and hereby is **SUSTAINED.**

list in making its termination recommendation, or that defendant otherwise considered age in reaching its decision to eliminate plaintiff's position. *See Stendebach v. CPC Int'l, Inc.,* 691 F.2d 735, 738 (5th Cir.1982); *Herber v. Boatmen's Bank of Tenn.,* 781 F.Supp. 1255, 1263 (W.D.Tenn.1991).